BROWNING *v.* STATE.

Opinion delivered October 21, 1907.

1.  TRIAL,—IMPROPER ARGUMENT.—A new trial will not be granted on account of improper remarks of appellee's counsel where the court directed the jury not to consider them, and where the evidence was sufficient to sustain the verdict. (Page 135.)

2.  SAME—IMPROPER QUESTION.—Where one of the State's attorneys asked defendant's witness whether his father was not tried for murder, and on objection the question was withdrawn, the court remarking: "I will instruct the jury to pay no attention to it, regardless of what the answer might be," the question was harmless. (Page 135.)

Appeal from Independence Circuit Court; *Frederick D. Fulkerson,* Judge; affirmed.

*Gustave Jones* and *McCaleb & Reeder* for appellant.

The appellant was prejudiced on the trial of this case by counsel for the State asking the witness Blanchett, on cross-examination, if his, Blanchett's father had been indicted for a felony in Lawrence County, and by the refusal of the court to rebuke counsel for asking such question when requested so to do. Appellant was further prejudiced by the statement of counsel in argument to the jury that he and his co-counsel had requested witness Blanchett to meet them for the purpose, not to ascertain the facts, but to find out how many and what ridiculous lies he would swear to, this being appellant's only witness beside himself. 58 Ark. 368; 61 Ark. 130; 63 Ark. 174; 75 Ark. 577; 74 Ark. 300; 77 Ark. 19; 73 Ark. 148; 72 Ark. 138; 70 Ark. 305.

*William F. Kirby,* Attorney General and *Daniel Taylor,* for appellee.

The only reasonable conclusion to be drawn from the evidence is that appellant became enraged over **the opprobrious** epithet applied to him by the deceased, and for that reason shot him down; and the theory that deceased was about to strike him at the time of the shooting is contrary both to the testimony and the situation and attitude of the parties. Mere words do not justify an assault, and, in view of the facts developed in testimony and the light punishment imposed upon him, appel-

lant could not have been prejudiced by the remarks of counsel complained of. 74 Ark. 256; 75 Ark. 67. Nor will this court presume that prejudice resulted, since the trial court promptly instructed the jury to disregard the alleged improper remarks. 75 Ark. 246; *Id.* 347; 77 Ark. 65; 76 Ark. 39; *Id.* 286; 67 Ark. 365.

. BATTLE, J. Appellant, Frank Browning, was indicted by a grand jury of Lawrence County for murder in the first degree, committed by killing Thomas W. Midkiff at Hoxie, in Lawrence County, in this State. The venue in the case was changed to Independence County, where he was tried and convicted of manslaughter, and his punishment was fixed at five years and six months in the penitentiary; and he appealed to this court.

Midkiff, the deceased, was a telegraph operator at Hoxie, and had his office in what had been a box car. On the 28th of December, 1905, about eleven o'clock in the forenoon, the appellant, Browning, called at his office, sent a telegram, and left. He returned about 1:30 P. M. to inquire about an answer to his telegram, and Midkiff informed him that he would probably not get an answer until four or five o'clock in the evening. He demanded the fee he had paid for an answer to his telegram. Angry words followed.

Joseph O'Shea, a ticket agent of a railroad company at Hoxie, who was within a few feet of the appellant and deceased at the time of the difficulty btween them, testified that, before there were any words between them, he heard the appellant say to the deceased: "I paid for service, and expect to get it." Afterwards, he heard the deceased order the appellant to leave his office, and then heard a noise like one hitting the counter with a club, and heard Browning say: "All right, I will go; open the door." Midkiff opened the door with his left hand, Browning stepped out; Midkiff reached up his right hand for a wire latch, about six feet high, to close the door, and as he did so appellant fired a pistol at him, and he fell in the arms of the witness, and expired immediately.

Harve Harris testified that he was at Hoxie on the day of the killing; was standing at the end of the car used as a station; looked in and saw Midkiff hit the counter with a club two or three feet long, and heard him tell Browning to get out, and Browning replied he would, to open the door; Midkiff opened

the door; Browning walked out, and as he did so Midkiff said, "You bastard," and when he said this Browning turned and shot him, and then said, "Don't call me a bastard. You robbed me."

H. L. Coffman testified that on the day of the killing he passed directly in front of what is called the box car depot, and went across to the platform, and there heard the remark: "Get out," and heard some one say, "Open the door, and I will get out," and he (witness) thought it was probably some one drunk, and started over to see. As witness crossed the track, Midkiff opened the door with his left hand, and had a club in his right hand raised in a position for striking. Browning stepped out, when Midkiff remarked, "You damned bastard, stay away from here!" and then Browning wheeled and shot him, killing him instantly. Midkiff had the club in a position to use, but did not attempt to do so, as he did not have time. After he fired Browning said he allowed no man to call him a bastard.

Less Dennington testified that he was standing near the Hoxie crossing, opposite the Iron Mountain track, at the time of the killing, and heard loud talking, and saw Browning back out of the door sideways and fire a pistol; "do not know what Midkiff was doing, but saw his hand raised above the door, and seemed to be reaching for something."

John Blanchett, a witness for defendant, testified as follows:

"I was on the platform across from the box car used as a station at Hoxie, and nearly in front of door of telegraph office, at time of difficulty between Midkiff and Browning. Heard some loud talking at box car; heard Midkiff tell Browning to get out; called him a son-of-a-bitch, and told him to get out. Never heard Browning say anything. Midkiff had club drawn back, like he was aiming to hit the man with it. While he had the club drawn, he called Browning a bastard, and told him to get out, and told him if he didn't he would kill him. Browning walked out, and then turned around, and shot Midkiff, and said that he would not submit to being called a bastard. Gibson and other attorneys for the State asked me to come around to their room and go over the case with them. Knowing I had been summoned here as a witness for defendant, I met them last night at Mr. Casey's office, and told them all I knew about the case, as I have told it here today."

One of the attorneys for the State, on cross-examination, asked witness if he was the son of Joe Blanchett, and he answered that he was. The attorney then asked if his father was not tried for murder. The question was objected to, and withdrawn, and was not answered, and the court remarked, "I will instruct the jury to pay no attention, regardless of what the answer might be."

Frank Browning, the appellant, in behalf of himself, testified as follows:

"I went into the operator's office about 10 or 11 o'clock to send a message. I went away, and about one, or something after, went back, and Mr. Midkiff told me I would not receive the message until four or five o'clock, and I told him I wanted to get service earlier, as I wanted to get back. He said I could not get service any quicker. I said, 'If I can't get service quicker, I have paid you, and you can give me back my twenty-five cents, and if I am here when it comes I will pay you.' He said 'Get out,' and I backed up, and he grabbed the stick. He struck at me, and I threw up my hand. I said, 'Open the door and let me out,' and as I got even with him he said. 'Get out of here, you damned bastard, or I will kill you!' and as I stepped out and turned my back I saw he had the club raised, and I jerked my gun out and fired. I thought he was going to strike me with the club."

On cross-examination he further testified: "I told him (Midkiff) to give me back my twenty-five cents, and if I was there when it (answer to telegram) came I would receive it and pay him, and that was when he grabbed the stick. He struck me with it before he struck the counter. He struck me on the right side of the head."

During his argument before the jury one of the attorneys for the State stated to the jury that on the night previous to the day on which the witness (Blanchett) testified, he and his cocounsel requested said witness to meet them at a certain room for the purpose, not of ascertaining the facts, "but to find out how many and what outrageous lies said witness would testify to," and to this statement appellant at the time excepted, and the court instructed the jury not to consider the statement, nor

let it have any weight with them in arriving at their verdict.

The appellant relies solely on the improper remark of the attorney as to witness Blanchett and the question asked him as to the trial of his father for murder, for reversal.  He insists that they were prejudicial, and the judgment against him should be reversed.

The rulings of this court upon the improper conduct of counsel is summed up in *Kansas City Southern Railway Co.* v. *Murphy,* 74 Ark. 256, as follows: "In the final analysis, the reversal rests upon an undue advantage having been secured by argument which has worked a prejudice to the losing party not warranted by the law and facts of the case.  In the one class of cases the reversal rests upon the abuse of the discretion of the trial judge in not confining the argument within its legitimate channel, and not properly instructing upon it or sufficiently reprimanding or punishing the offending attorney; and in the other or exceptional class rests upon the extremely harmful nature of the remarks, which can not be cured other than in a new trial upon the merits of the case freed of extraneous prejudice." In the latter class of cases this court has said: "As a general rule, 'an objection by the opposing counsel, promptly interposed, followed by a rebuke from the bench, and an admonition from the presiding judge to the jury to disregard prejudicial statements,' is sufficient to cure the prejudice." *Holder* v. *State,* 58 Ark. 473, 483; *Kansas City, Ft. Scott & Memphis R. Co.* v. *Sokal,* 61 Ark. 130, 138; *German-American Insurance Co.* v. *Harper,* 70 Ark. 305, 307.

It does not appear that the case at bar is an exception to the general rule.  The appellant promptly interposed an objection to the remark of counsel, and the court directed the jury to disregard it, and thereby rebuked the counsel for making the same.  Was the remark nevertheless harmful?  The evidence was sufficient to sustain the verdict of the jury.  The most reasonable view of the facts sustains it. Appellant was convicted of manslaughter.  The evidence shows that he did the killing in the heat of passion.  The testimony of Blanchett, the impeached witness, supports this conclusion.  He testified that, at the time Browning fired the fatal shot, he said he could not submit to being called a bastard.  The remark was explanatory of his

action. We therefore see no good reason to conclude that the objectionable remark prejudiced the appellant.

The objectionable question propounded to Blanchett on cross-examination by appellee did not affect the credibility of the witness, and was withdrawn unanswered, the court remarking, "I will instruct the jury to pay no attention to it, regardless of what the answer might be." It was harmless.

Judgment affirmed.