## WILLIAMS v. STATE.

### Opinion delivered October 29, 1917.

1. FORGERY—FORM OF INDICTMENT.—Forgery is a crime defined by the statutes and it is sufficient under our criminal code to allege the offense in the words of the statute.

2. FORGERY—NOTE—PROOF OF JUDGMENT BY JUSTICE OF PEACE.—Defendant was charged with forging a promissory note, and in a trial of the cause it is proper to permit a justice of the peace to testify that a judgment had been rendered in his court in favor of the payee (the person defrauded) and against the defendant, and that no part of the judgment had been paid.

3. FORGERY—EVIDENCE—CUSTOM AS TO PERMITTING PERSONS TO SIGN NAMES TO NOTES.—Defendant was charged with forging the name of his brother, Oscar Williams, to a promissory note. There were several Williams' brothers. *Held*, it was proper to exclude testimony offered by defendant, that a practice existed among the

Williams' brothers generally of signing each other's names to notes. *Semble,* defendant might offer evidence to prove that it had been the practice of Oscar Williams to allow him to sign his name to notes.

4. TRIAL—CRIMINAL LAW—ARGUMENT OF STATE'S ATTORNEY.—In a prosecution for forgery, the State's attorney said in argument to the jury: "The defendant brought J. W. here, and L. E. W., and placed them on the witness stand to prove certain things, and the court promptly refused to let him do it. If he had any defense he could have shown it." Defendant's sole defense was that he believed that he had authority to sign the name of the person whose name he was accused of forging. *Held,* the remarks of counsel were not prejudicial, where the court told the jury that if counsel made statements of matters not in proof, that they should disregard those statements entirely, disregarding prejudice, denunciation and sympathy, and follow the law and evidence.

Appeal from Randolph Circuit Court; *J. B. Baker,* Judge; affirmed.

*S. A. D. Eaton,* for appellant.

1. The indictment is defective. It does not charge that the note was signed without the authority of Oscar Williams. 56 Pac. 750; 37 N. E. 1040; 28 Pac. 597; 46 *Id.* 99; 48 *Id.* 1024; 67 N. W. 267. A failure to allege want of authority to sign can not be supplied by proof. 32 S. W. 983; 86 N. W. 406; 27 Iowa 402; 43 Pac. 1075; 22 Cyc. 296.

Kirby's Digest, § 2243, was not intended to validate an indictment that would be invalid at common law. 29 Ark. 149. The words "forge" and "counterfeit" with intent, etc., state a conclusion of law merely and are insufficient. 38 Ark. 521; 12 Bush 343; 27 S. W. 816; 154 S. W. 222; 25 Tex. Supp. 340; 8 Oh. C. C. 463, 2 Mill 135; 12 Tex. App. 395; 13 Wend. 311, 317; 83 Mo. 299; 19 Cyc. 1405. The facts here differ from those in 104 Ark. 213. See 191 S. W. 899; 26 S. W. 330; 27 *Id.* 493; 43 *Id.* 93; 67 *Id.* 308. It fails to comply with Kirby's Digest, § 1712. It also fails to allege that the note was given for the payment of money, or that a note or other writing was forged.

2. There is a variance between the note set out in the indictment and the one offered in evidence. 58 Ark. 242; 77 *Id.* 537; Bishop New Cr. Proc. 407; 7 N. W. 331; 19 Cyc. 1400.

3. It was error to admit Oscar Williams' testimony and E. Dalton's as to the note, and in allowing leading questions. It was also error to permit the justice to testify as to the judgment rendered by him, and also in allowing the record of said judgment. This was wholly irrelevant and prejudicial. 189 S. W. 262.

4. It was error to refuse evidence showing the practice among the Williams' brothers of signing each other's names to notes. 51 Ark. 88-92; 52 *Id.* 45.

5. There was error in the instructions and in the closing remarks of counsel for the State.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The indictment is not defective. It charges the crime sufficiently. 104 Ark. 212; 114 *Id.* 452; 125 *Id.* 215; Wharton Cr. Law 1151; 30 Kan. 365; 76 Minn. 211.

2. The indictment follows the statute. Kirby's Digest, § 1714.

3. There is no variance. 90 Ark. 123; 127 Ark. 204; Wharton Cr. Law 1159.

4. There was no error in allowing the justice to testify, nor in admitting the record of the judgment. If part of it was inadmissible a specific objection should have been made. Only a general objection was made. 82 Ark. 23; 84 *Id.* 377; 82 *Id.* 555.

5. There was no error in refusing to allow L. E. and John Williams to testify as to the custom of the brothers in signing each other's names to notes. The questions were too general and in no way connected the signing of this note.

6. There is no error in the instructions, and none in the remarks of counsel. The evidence supports the verdict.

HART, J. O. C. Williams was indicted for the crime of forgery charged to have been committed by forging the name of his brother, Oscar Williams, to an instrument of writing purporting to be a promissory note with the fraudulent intent to injure Lewis Dalton in his estate. He was tried before a jury and convicted, his punishment being fixed at a term of two years in the State penitentiary. From the judgment of conviction he has duly prosecuted an appeal to this court.

On the part of the State it was proved that the defendant, O. C. Williams, owed Lewis Dalton a promissory note in the sum of something over one hundred dollars. He made payments sufficient to reduce the indebtedness to $61.65. Dalton agreed to grant Williams an extension of time if he would make a new note and get his brothers other than L. E. Williams as sureties. O. C. Williams executed a new note to Dalton for $61.65 and the note purports to have been signed by Oscar Williams and other persons. After the note became due, Dalton being unable to collect the note from O. C. Williams, demanded payment thereof of Oscar Williams. Oscar Williams refused to pay it and denied that he had signed the note. Oscar Williams was placed upon the stand by the State and the note in question was presented to him. He denied that he ever signed the note or authorized any one else to sign it for him.

On cross-examination Oscar Williams stated that it had been the practice of his other brothers to sign each others names to notes without consulting each other about it. He stated that he had never signed any of his brothers' names to notes but that his brothers had signed his name to notes before the execution of the one in question; that the defendant had signed his name several times to notes before this and that he had not made any objection.

On redirect examination he stated that there was no understanding that the defendant might sign his name to notes; that while he had done this several times, that

there has been no understanding that he should do it. He stated again that he did not give his brother permission to sign his name to the note in question. When Oscar Williams was sued on the note he defended on the ground that his name on the note had been forged.

The defendant testified that he signed the name of Oscar Williams to the note, that the reason he did so was that Oscar had always told him to do it; that it had been the practice of the brothers to sign each other's name to notes; that Oscar had never before objected to him signing his name to notes; that at the time he signed Oscar's name to the note in question that he had no thought or intention of injuring Lewis Dalton in his property.

The evidence on the part of the State if believed by the jury was sufficient to warrant the conviction of the defendant.

The charging clause of the indictment reads as follows:

"The said O. C. Williams, in the county and State aforesaid, on the 9th day of May, 1914, did then and there fraudulently and feloniously forge and counterfeit the name of Oscar Williams to an instrument of writing purporting to be a promissory note, with the fraudulent intent to him, the said O. C. Williams, then and there to cause Lewis Dalton to be injured in his estate and lawful rights."

It is the contention of the defendant that the indictment is defective because it did not state that the note was signed without the authority of Oscar Williams. Authorities are cited by him to sustain his contention but we think they are not in accord with the trend of our own decisions and are contrary to the better reasoning on the question.

(1) Forgery is a crime defined by our statutes and it is sufficient under our criminal code, as a general proposition, to allege such an offense in the words of the statute. In *Ary* v. *State*, 104 Ark. 212, it was held that

an indictment for the forgery of a check which alleged that the accused "did make, forge and counterfeit the check, with the intent fraudulently and feloniously to obtain possession of the property of B. M.," sufficiently alleged that said B. M. did not sign the check or authorize it to be signed. Now, the indictment here uses the words, "did then and there fraudulently and feloniously forge and counterfeit the name of Oscar Williams." These words are a statement of facts and are not a mere conclusion of law.

In the case of *State* v. *Foster,* 30 Kan. 365, the court held that forgery in that State was a statutory offense and that as a general proposition it was sufficient to allege such an offense in the words of the statute. The court said:

"While there may be some limitations on this general doctrine, as where the statute simply designates the offense, and does not in express terms name its constituent elements, yet we think the rule obtains in the case at bar. Of course it was never the duty of the pleader to narrate the evidence, and we think the words 'pass, utter and publish' make a clear and sufficient description of fact. They are words of common use, and refer to acts which are understood by every one."

In the case of *State* v. *Greenwood,* 76 Minn. 211, the court said:

"The gist of the offense of forgery is the intent to defraud. It is not necessary nor advisable to set out the name of the person intended to be defrauded. The elements of fraud to be charged in the indictment, according to the law books, are a writing apparently valid, and evil intent on the part of the accused, and a false making of such writing."

The court held that the matters just referred to are all charged in an indictment which uses the word "forge" and that the word "forge" contains a statement of fact and not a mere conclusion of law, and includes the false making of an instrument, in whole or in part.

Tested by this rule we are of the opinion that the indictment in question was not defective.

(2) The next assignment of error on the part of the defendant is that the court erred in allowing the justice of the peace to testify that a judgment had been rendered in his court in favor of Dalton against the defendant and that no part of the judgment had been paid. The note had been filed before the justice of the peace and judgment had been rendered on it. It was competent for the justice of the peace to identify his record and read it in evidence before the jury in order to show that the note had never been paid and thus to establish that Dalton had been injured in his property.

It is true that the defendant testified that he was not served with summons in the suit before the justice of the peace and the record shows that fact, but the record of the justice of the peace also shows a return of summons by the sheriff of personal service on Oscar Williams in the township where the justice of the peace resided and held office.

It is also contended that the judgment of the justice of the peace should not have been introduced in evidence because it contained a recitation of a finding by the justice that Oscar Williams did not sign the note but that his name was forged thereto by O. C. Williams. A general objection only was made to the introduction of the judgment of the justice of the peace. As before stated it was competent to introduce it to show that the note had not been paid and thus to establish that Dalton had been injured in his property. The defendant should have asked by appropriate instructions or otherwise to have it limited for that purpose but not having done so, he is not now in the attitude to complain.

(3) It is next contended by counsel for the defendant that the court erred in not allowing L. E. Williams and John Williams to testify as to a practice among the Williams brothers in signing each other's names to notes. The testimony offered to the jury by the defend-

ant was that a practice existed among the Williams brothers generally in signing each other's names to notes. The court held that this was too general but offered to allow the defendant to prove that it had been the practice of Oscar Williams to allow him to sign his name to notes. · The court was right in its ruling. The fact that any of his other brothers had permitted the defendant to sign their names to notes would have no tendency to prove that Oscar Williams had given such permission to the defendant. *Tongs* v. *State*, 130 Ark. 344.

It is next insisted that the court erred in refusing to give instruction number two with reference to the practice of the Williams brothers in signing each other's names to notes. The instruction need not be set out here. The instruction was fully covered by an instruction which the court gave which is as follows:

"You are further instructed that if you believe from the evidence in this case that the defendant had been in the habit of signing the names of his brothers, including Oscar, to instruments of writing, with the knowledge and consent of Oscar Williams, without objection by said brothers or any of them thereto, prior to the signing of the note, the forgery of which is charged in the indictment in this cause, then you will be authorized to consider such fact in considering the question of criminal intent of the defendant in signing the name of said Oscar Williams to the note in evidence in this case."

Without approving the form of this instruction, it may be said that it was as favorable to the defendant as he had a right to ask.

(4) Error is assigned in refusing other instructions asked by the defendant. We do not deem it necessary to set out these instructions. The defendant admitted that he signed his brother's name to the note in question and his sole defense is that he had been in the habit of signing his brother's name to notes before and that he had never objected to his so doing; that he had no thought or intention of injuring Dalton in his property

when he signed his brother's name to the note but believed that he had a right to sign it.

The defendant's theory was fully presented to the jury by the instructions given by the court and he can not complain that the court refused to multiply instructions on this point.

Special counsel for the State in his closing argument to the jury used the following language:

"The defendant brought John Williams here, and L. E. Williams, and placed them on the witness stand to prove certain things, and the court promptly refused to let him do it. If he had any defense he could have shown it."

It is contended that this was error because if the court refused to permit defendant to prove certain things by these witnesses, then such matters were not in the record and it was not proper for counsel to comment on them. It will be noted that counsel did not state what defendant had offered to prove by his brothers and it does not seem to us that the language used could have in any wise prejudiced the defendant's rights before the jury. The argument of counsel is generally within the discretion of the trial court and its rulings in regard thereto will not be reversed unless there is manifest error therein. The court gave the jury a specific instruction in which it told the jury that if counsel made statements of matters not in proof, it should disregard those statements entirely, disregarding prejudice, denunciation and sympathy and follow the law and evidence.

The court further told the jury that what the attorneys said they believed about the case should not be considered by the jury. The court refused to exclude the remarks in question, giving as its reason for such refusal that the instruction it had already given fully covered the statements. Thus it will be seen that if any

prejudice might have resulted to the defendant from the remarks, it was removed by the remarks of the court.

We have carefully considered the record and finding no prejudicial error in it, the judgment will be affirmed.