HINES v. STATE.

Opinion delivered September 29, 1919.

1.  HOMICIDE—ADMITTED KILLING—PROOF OF JUSTIFICATION.—Where the killing is both proved and admitted, it devolves upon the accused to prove circumstances in justification or excuse; but it is sufficient for him to show facts which would raise in the minds of the jury a reasonable doubt as to his guilt.

2. SAME—FELONIOUS INTENT.—The evidence *held to* warrant an instruction that if accused, "armed with a deadly weapon, sought the deceased with a felonious intent to kill him or sought or brought on, or voluntarily entered into, the difficulty with deceased, with the felonious intent to take his life, then defendant can not invoke the law of self-defense, no matter how imminent the peril in which he found himself placed."

3. HOMICIDE—EFFECT OF ACCUSED ARMING HIMSELF.—Instructions that although accused armed himself with a pistol, and went to deceased's store, in the course of his duty, not to engage in a difficulty, but to peaceably settle a misunderstanding, and that he armed himself for protection only, the fact that he did arm himself will not cut off his right of self-defense, *held* correct.

4. APPEAL AND ERROR—MULTIPLICATION OF INSTRUCTIONS.—Appellant can not object to the refusal to grant his prayer for an instruction, where the court in another instruction given completely covers the issue.

5. CRIMINAL LAW—READING STATUTE TO THE JURY.—In a criminal prosecution it is not error to read to the jury sections of the digest relating to the issue.

6. TRIAL—REMARKS OF COUNSEL—REMOVAL OF PREJUDICE.—In a criminal trial, defendant's counsel stated in his opening statement, that defendant had nothing to conceal. During the trial said counsel objected to certain testimony offered by the State, and was sustained. In argument the State's attorney referred to the incident as an attempt by defendant to conceal something. Defendant's counsel objected to this argument, and was overruled. Later the State's attorney made the same assertion, counsel again objected and was this time sustained. The court said: "Mr. P., that argument is wrong and the jury will not consider it and you had better not follow it any further." The attorney then said that his only object in making the argument was to answer counsel's statement that accused had nothing to conceal. Defendant's counsel then requested the court to withdraw these remarks from the jury and to reprimand and punish counsel. The court overruled the motion and told Attorney P. to proceed with his argument within the ruling of the court.

*Held*, the action of the court, after defendant's second objection related back to all the remarks made by the State's attorney at any stage of his argument and was tantamount to a reconsideration of the court of its first ruling in the matter, and was equivalent to a favorable ruling to the defendant in both instances.

Appeal from Miller Circuit Court; *George R. Haynie*, Judge; affirmed.

*W. F. Denman* and *J. M. Carter,* for appellant.

The court erred in giving instructions asked by the State and in refusing those asked by defendant. There was prejudicial error in the remarks of the State's attorney and the action of the court thereon. 61 Ark. 174; 63 *Id.* 176; 72 *Id.* 139-140; 58 *Id.* 478; 61 *Id.* 130; 95 *Id.* 237.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1. Instructions Nos. 6 and 9 given for the State were properly given. 120 Ark. 193; 76 *Id.* 515. Nos. 10 and 11 were proper. There was no error in refusing No. 8 for defendant, nor No. 7. These were covered by others given correctly.

2. There was no reversible error in the argument of the prosecuting attorney. The admonition of the court was sufficient. 23 Ark. 32; 193 S. W. Rep. 89. See also 93 Ark. 66; 74 *Id.* 555; 123 *Id.* 619.

3. All the instructions of the court are not set out in the bill of exceptions. 46 Ark. 207; 78 *Id.* 374; 28 *Id.* 549; 104 *Id.* 315.

4. There were no exceptions saved to the argument or remarks of counsel. 84 Ark. 95; 86 *Id.* 360.

5. There is no record here upon which this court can reverse; the record is not properly authenticated. 5 Ark. 474; 6 *Id.* 252; 9 *Id.* 474; 11 *Id.* 639; 1 *Id.* 20; 73 *Id.* 608.

### STATEMENT OF FACTS.

Jeff D. Hines was indicted for murder in the first degree charged to have been committed by killing Peter W. Mackley. He was tried before a jury and convicted of murder in the second degree, his punishment being fixed at a term of fifteen years in the State penitentiary.

The facts are as follows: On the part of the State it was shown that Peter W. Mackley was shot and killed by Jeff D. Hines at the former's floral shop in Texarkana, Arkansas, about 5:30 o'clock P. M. on the 8th day of March, 1919. The defendant, Jeff D. Hines, worked for

the express company in the city of Texarkana, Arkansas, and delivered packages for it. The deceased, Peter W. Mackley, conducted a floral shop in that city in which he was assisted by his wife. On the afternoon before the killing the defendant brought some flowers which had been received by express to the store of Mackley for the purpose of delivering them. Mrs. Mackley opened the flowers and at first refused to receive them because they were wilted. The flowers had been sent from Neosho, Mo., and she claimed that they should have arrived on the morning train and have been delivered then. After some discussion about the matter with the defendant, the claim agent of the express company was called in and Mrs. Mackley received the flowers upon his promise to pay the damages.

According to the testimony of some of the witnesses, Mrs. Mackley told the claim agent, in the presence of Hines, that she did not believe there was a drop of gentleman's blood in Hines' body. Mrs. Mackley admitted using this language concerning Hines, but stated that she used it after Hines had left the store.

Miss Jennie Van Treese, a friend of Mr. and Mrs. Mackley, was present in the store at the time Mackley was killed and witnessed the killing. According to her testimony, Hines came in and laid his express book down on the show case on a counter in the front part of the store. Mr. Mackley started to sign a receipt for the express agent, but before he had completed his signature, Hines threw a pistol in Mackley's face and ordered the latter to throw up his hands. Mackley threw up both of his hands and Hines held the gun right in Mackley's face with both hands on it. Mrs. Mackley saw Hines draw the pistol on Mackley and immediately got up and went towards her husband. She got a pistol out of a desk and started towards her husband with it hanging down by her side. This was the last the witness noticed of Mrs. Mackley until after the killing. Hines stepped back two steps and shot several times. Two shots took effect in Mackley's body and resulted in his death. Two other

shots took effect in the body of Mrs. Mackley. The witness was so scared that she does not recollect the number of shots that were fired. The witness stepped into a back room while the shooting was going on and remained there until it was over.

It was shown by the State that one of the shots entered Peter W. Mackley's left breast between the first and second ribs and ranged downward. The other shot entered his back about two inches below the belt line in the center of the back and the bullet lodged in his hip. One of the shots took effect in the chest of Mrs. Mackley and was a pretty serious wound. Another took effect in her hip and was of no importance.

According to the testimony of Mrs. Mackley, she first saw Hines enter the front part of the store and called her husband's attention to the fact. They both knew that Hines had come to collect charges on the flowers delivered the day before, because their claim for damages had been settled by the express company. Mr. Mackley got up and went to the front part of the store to attend to the matter and Mrs. Mackley paid no further attention to it right at the time. In a few moments her attention was attracted by loud talking and she heard the word "apologize." She looked up and saw Hines with a pistol presented right in the face of her husband. Her husband had both of his hands in the air. Mrs. Mackley jumped up and ran to a desk and took a pistol out of it and started towards her husband to protect him. Before she reached her husband Hines began firing at him and her husband staggered back towards her. She caught him before he fell and he never said another word. She helped carry him to the back part of the store where he died. She did not attempt to use her pistol. She did not remember whether she dropped it, or what she did with it. The defendant shot her in the breast and one of the shots also took effect in her hip, but the latter shot did not bother her much.

Jeff D. Hines, the defendant, was a witness for himself. According to his testimony he had not been in Tex-

arkana long and his work was to deliver perishable goods for the express company. He knew Mr. and Mrs. Mackley in this way, and Mr. Mackley had always treated him nicely. On the day before the killing he carried a package of flowers into their store which had been sent from Neosho, Missouri, and Mrs. Mackley thought he had spoken abruptly to her about the flowers and spoke harshly to him about the matter. Their controversy resulted in the claim agent being sent for and he settled with the Mackleys for the flowers. Mrs. Mackley stated in Hines' presence that he did not have a drop of gentleman's blood in his body. The defendant left the store without resenting this or saying anything further to her about it. According to his testimony, Mrs. Mackley also called him a liar, but she denied doing this. Before commencing to deliver goods on the next day, the defendant borrowed a pistol to carry up to the store in case Mr. or Mrs. Mackley would try to do him any violence. He thought from the way they talked and acted the day before that they were going to try to do something to him and for that reason he carried a pistol up there for the purpose of protecting himself. He went into the store to collect for the flowers delivered the day before. He laid his book on the end of the counter just like he always did, and Mr. Mackley came up to the front of the store to sign it. The defendant said, "Mack, don't you think you ought to apologize to me for the way I was treated yesterday?" He said, "What?" and Hines repeated it, "Don't you think you ought to apologize to me for the way I was treated yesterday?" and Mackley said, "Hell, no, you damn son-of-a-bitch." When he said that Hines said, "Yes, you will," and threw his gun on him. Mackley then said, "I have got no gun, I'll apologize." Hines said, "All right, Mack," and asked Mackley what did he want to talk to him that way for, and said, "I don't see why you shouldn't want to apologize." Hines then walked up to him. Mrs. Mackley got up from where she was sitting and pulled a gun out of a desk and started forward. Hines then stepped back two or three feet and

said, "Lady, put up that gun, the trouble is all over with;" she said, "No, it ain't, either, I'm in on this." When she got up to get her pistol, Hines had his pistol on Mr. Mackley. Hines told her several times to stop. When he first told her to stop he had his gun in his bosom but had it where he could whip it into place any time he wanted to. When Mrs. Mackley got to Mr. Mackley, his hands were up. It seemed like they both stopped for about a second and that Mr. Mackley did not want to take the gun from her. Hines had his gun on Mr. Mackley at that moment. Mrs. Mackley saw her husband was not going to take the gun and the defendant thought she started to shoot. He shot at her and shot to kill. Mackley then grabbed for the gun and Hines fired at him. He did not know that he hit him the first shot and fired again.

Other witnesses were introduced both on the part of the State and of the defendant whose testimony tended to corroborate the testimony of the witnesses above recited. The case is here on appeal.

HART, J., (after stating the facts). (1) It is insisted by counsel for the defendant that the court erred in giving instruction No. 9, which is as follows: "The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by proof on the part of the prosecution it is sufficiently manifest that the offense only amounted to manslaughter, or that the accused was justified or excused in committing the homicide."

There was no error in giving this instruction. The instruction as given is a copy of section 1765 of Kirby's Digest. The killing of Mackley by the defendant was both proved and admitted, and the statute is applicable and makes it devolve on the defendant to prove circumstances in justification or excuse. In other instructions the court plainly instructed the jury that the burden was on the State to prove the defendant's guilt beyond a reasonable doubt. The jury were fully and fairly instructed on the question of reasonable doubt in other instructions given by the court, and in this way the rights of the

defendant were entirely safeguarded. *Tignor* v. *State,* 76 Ark. 489; *Johnson* v. *State,* 120 Ark. 193, and *Turner* v. *State,* 128 Ark. 565. So it will be seen that the jury understood from the instructions of the court that, although the burden of proving acts of mitigation or justification devolved on the accused, it was sufficient for him to show facts which would raise in the minds of the jury a reasonable doubt as to his guilt.

(2) It is next insisted that the court erred in giving instruction No. 11, which is as follows: ''If you believe from the evidence in this case that the defendant, armed with a deadly weapon, sought the deceased with a felonious intent to kill him, or sought or brought on, or voluntarily entered into the difficulty with deceased with the felonious intent to take his life, then the defendant can not invoke the law of self-defense, no matter how imminent the peril in which he found himself placed.''

It is claimed by counsel for the defendant that there is no testimony upon which to predicate this instruction. The evidence shows that the defendant and the wife of the deceased had a controversy over the delivery of some flowers on the day before the killing. According to the defendant's own testimony, he anticipated further trouble with the parties about the flowers and for that reason armed himself with a pistol. When he first went into the store and before the deceased had time to write his name upon the express book, the defendant demanded of him an apology for the way he had treated him the day before. From these facts and others appearing in the statement of facts there was abundant evidence upon which to predicate the instruction.

3. It is next insisted that the court erred in refusing to give instruction No. 1, asked by the defendant. The instruction is as follows: ''The fact that defendant procured a pistol and went to deceased's place of business armed is a circumstance that the jury may consider in determining what was his purpose and intention in going there; but, after considering all the testimony in the case, if you believe he went there not for the purpose of en-

gaging in a difficulty with deceased, but in the discharge of the duties of his employment, and that he armed himself for protection only while in the performance of such duties, then the fact that he had armed himself would not cut off his right of self-defense.''

The court did give instruction No. 2, which is as follows: ''The fact that defendant procured a pistol and went to deceased's place of business is a circumstance that the jury may consider in determining what was his purpose and intention in going there; but, after considering all the testimony in the case, if you believe he went there, not for the purpose of engaging in a difficulty with deceased, but in the discharge of the duties of his employment, or to settle peaceably with him a misunderstanding or ill feelings between them, or between him and deceased's wife, and that he armed himself for protection only while trying to carry out such purpose, then the fact that he had armed himself would not cut off his right of self-defense.''

According to the defendant's own testimony, it was necessary for him to go to the deceased's place of business in the course of his employment. He anticipated further trouble with the deceased or his wife and armed himself that he might protect himself from violence at their hands. The defendant, also, said that as soon as he went into the store on the day of the killing he demanded an apology from the deceased for what had been said to him the day before. So it will be seen that both of these theories of the defendant were presented to the jury by the instructions given by the court.

4. It is next insisted that the court erred in refusing to give instruction No. 8, which is as follows: ''The law presumes the defendant innocent of this charge, and this presumption shields and protects him, and in reasonably doubtful cases is in itself sufficient to turn the scale in his favor and acquit him.''

The court gave instruction No. 9, which is as follows: ''The law presumes the defendant in this case innocent of the charge against him, and that presumption of inno-

cence shields and protects him from a conviction in this case until such time as you may find from the evidence beyond a reasonable doubt the defendant is guilty of the charge against him.''

Thus it will be seen that the matters embraced in instruction No. 8 as asked by the defendant were completely presented in instruction No. 9, which was given by the court.

The defendant also contended that the court refused to give certain instructions asked by him on the question of reasonable doubt. We do not deem it necessary to set out these instructions because the court gave other instructions on that subject which were complete in themselves and fully and fairly submitted that question to the jury.

5. The court also read to the jury certain sections of the digest relating to homicide. There was no error in this. *Mitchell* v. *State,* 73 Ark. 291. One ground of objection to the reading of these sections of the statute was that they did not contain any charge on the subject of appearance of danger to the defendant. This phase of the case was fully and fairly submitted to the jury in other instructions given by the court, and the instructions when read as a whole are harmonious. Therefore the court did not err in this regard.

6. Finally it is insisted that the court erred in not granting a new trial because of certain remarks made by one of the attorneys for the State in his closing argument to the jury. In his opening statement to the jury the defendant's counsel told the jury that the defendant had nothing to cover up or conceal from the jury. Later on he objected to certain testimony being given to the jury at the instance of the State, and the court sustained his objection and excluded the testimony. One of the State's attorneys, in his closing argument, referred to this fact as an attempt by the defendant to conceal the facts from the jury. The defendant's counsel objected to the argument, but the court overruled his objection. Counsel for the State then proceeded again with the same line of ar-

gument, and the defendant again objected to the argument. Thereupon the court said to the counsel for the State making the argument: "Mr. Parks, that argument is wrong, and the jury will not consider it and you had better not follow it any further." The attorney then said that his only object in making that argument was in answer to Judge Carter's statement to the jury that the defense had nothing to conceal or hide in the case. Counsel for the defendant then requested the court to withdraw these remarks from the consideration of the jury and to reprimand and punish counsel. The court overruled his motion and told Attorney Parks to proceed with his argument within the ruling of the court above made and set out.

Counsel for the defendant assigned this action of the court as error, and rely upon the case of *Holder* v. *State,* 58 Ark. 473, and other cases of like character. In the Holder case the prosecuting attorney persistently defended his action and in defiance of the court repeated his objectionable argument. Here the facts are essentially different. Upon the first complaint the court overruled the objections of the defendant's attorney. Upon the second complaint he sustained his objections and specifically directed the jury not to consider the remarks and told the attorney for the State that his remarks were wrong and that he had better not repeat them. This had the effect to relate back to all the remarks made by the prosecuting attorney at any stage of his argument and was tantamount to a reconsideration of the court of its first ruling in the matter and was equivalent to a favorable ruling to the defendant in both instances.

It is true the State's attorney then stated that his only object in making the argument was in answer to the defendant's attorney's opening statement that he had nothing to conceal; but it does not appear to us that this remark was made in defiance of the orders of the court but was rather an apology for his transgression of the rules of argument. It seems that the court so understood it and declined to reprimand him further, but told

him to proceed with his argument within the ruling of the court above set out.

We think the action of the court removed any prejudice that might have resulted from improper remarks made by the counsel for the State, and that the jury disregarded the improper remarks of counsel as directed by the court and considered the case solely upon the testimony and the law. It may be fairly assumed from the record that the jury heeded the admonition of the court and did not consider the improper remarks made by the State's attorney. *Sims* v. *State,* 131 Ark. 185.

We find no prejudicial error in the record and the judgment will be affirmed.