HUGHES *v.* STATE.

Opinion delivered July 10, 1922.

1. INDICTMENT AND INFORMATION—FAILURE TO LAY VENUE.—An indictment, containing no statement of the venue except by a reference to the county and State in the caption, will be considered, under Crawford & Moses' Dig. § 3020, as charging that the offense was committed in the local limits of the court in which the grand jury was impaneled.

2. INDICTMENT AND INFORMATION—NEGATIVING PRESENCE OF ACCESSORY.—It is not necessary to the validity of an indictment against an accessory before the fact to a crime to negative the presence of such accessory at the perpetration of the crime.

3. HOMICIDE—CORROBORATION OF ACCOMPLICE.—Evidence of principal convicted of murder in the first degree *held* sufficiently corroborated to sustain conviction of accused as accessory before the fact.

4. CRIMINAL LAW—CONFESSION—INSTRUCTION.—Where a confession was admitted in evidence against accused, and there was a conflict as to whether it was voluntarily made, its admission was proper in connection with the court's charge to consider whether defendant was subjected to undue influence or coercion, etc.

5. CRIMINAL LAW—IMPROPER ARGUMENT.—It was the duty of the court in its sound discretion to challenge improper remarks with such comment as the exigencies of the occasion demand.

6. CRIMINAL LAW—IMPROPER ARGUMENT OF PROSECUTING ATTORNEY.—In a prosecution for murder, it was prejudicial error for the prosecuting attorney to state to the jury: "I know he is guilty. * * *. I have examined the testimony and know so much about it, I know things that never get to anybody else."

Appeal from Montgomery Circuit Court; *Scott Wood,* Judge; reversed.

*Witt & Witt, Richard M. Ryan* and *J. Wythe Walker,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

HUMPHREYS, J.  Appellant was indicted, tried, and convicted in the Montgomery County Circuit Court for the crime of being an accessory before the fact to murder in the first degree, and punished by imprisonment in the State Penitentiary for his natural life.  From the judgment of conviction an appeal has been duly prosecuted to this court.

Appellant contends that no crime was charged in the indictment because it does not allege that Anna McKennon was murdered in the State of Arkansas and the county of Montgomery; and because it does not negative the presence of appellant at the time and place of the killing.  Omitting the signature of the prosecuting attorney, and the indorsements, the indictment is as follows:

"Montgomery Circuit Court, State of Arkansas against H. M. Hughes.  The grand jury of Montgomery County, in the name and by the authority of the State of Arkansas, accuse H. M. Hughes of the crime of accessory before the fact to murder in the first degree, committed as follows, to-wit: The said H. M. Hughes in the county and State aforesaid, on the .......... day of May, A. D. 1921, that one Raymond Cole unlawfully wilfully, feloniously, with malice aforethought, deliberation and premeditation, did kill and murder one Anna McKennon by then and there shooting her with a gun and then and there loaded with gunpowder and bullets, then and there had and held in the hands of him the said Raymond Cole; and that said H. M. Hughes on the ............... day of May A. D. 1921, before the said murder was committed as aforesaid, unlawfully, wilfully, and feloniously, with malice aforethought, premeditation and deliberation, did advise and encourage, aid, abet and assist the said Raymond Cole to do and com-

mit the murder in the manner and form aforesaid, against the peace and dignity of the State of Arkansas.''

(1) In the body of the indictment reference is made to the county and State aforesaid, meaning Montgomery County and the State of Arkansas mentioned in the caption as well as the first part of the indictment. The last part of the indictment also charges that the offense was committed against the peace and dignity of the State of Arkansas. Reading the whole indictment together it is perhaps sufficient, though inaptly worded, to lay the venue in Montgomery County, Arkansas. We, however, uphold the indictment on the more substantial ground that its imperfections in this respect are cured by section 3020 of 'Crawford & Moses' Digest, which is as follows:

''If the indictment contains no statement of the place in which the offense was committed, it shall be considered as charged therein that it was commited in the local limits of the jurisdiction of the court in which the grand jury was impaneled.''

(2) It is not necessary to the validity of an indictment against an accessory before the fact to a crime to negative the presence of the accused at the perpetration of the crime. This court said in the case of *Larimore* v. *State*, 84 Ark. 606: ''Where the accused is indicted as accessory before the fact, it is unnecessary for the indictment to negative his presence at the perpetration of the crime. Presence at the perpetration of the crime marks the distinction, under our law, between principals and accessories before the fact, and it is sufficient in an indictment against an accessory to allege that he advised and encouraged the perpetration of the crime, without specifically alleging that he was not present.''

Appellant next contends that the evidence is insufficient to support the verdict and judgment. The record reflects that Raymond Cole, charged as principal in the crime, was convicted of murder in the first degree. He testified that appellant induced him to kill Mrs. Anna McKennon, at a time when he was intoxicated, by prom-

ising to pay him $850 as soon as he accomplished the act and returned to the home of Mrs. Noland, where appellant resided; that appellant furnished him a 44 Winchester, already loaded, with which to commit the deed; that he went to the home of the old lady, who resided alone, and, while she was standing in the front door, fired upon and killed her; that he took her pony which was hitched near the house and returned to the Noland home to leave the gun and get his money; that he set the gun on the back porch, but, being unable to find appellant, left for his mother's home, and a short time thereafter left the community. This witness was an accomplice, and under the rule, in order to convict appellant, it was necessary that the testimony of the accomplice be corroborated. The record reveals a number of facts and circumstances tending to corroborate the testimony of this witness.

After a very careful reading and analysis of the evidence, we think it sufficient to sustain the judgment and verdict.

Appellant next contends that the court committed reversible error in admitting a statement or confession made by him while under arrest in Garland County. After appellant's arrest by Montgomery County officers he made his escape and was captured by Garland County officers. While incarcerated in jail there, he was urged by the officers to make a confession, and there is some evidence tending to show that undue pressure was used in an attempt to elicit information concerning the murder. He refused, however, to yield and make any statement at the time. Later he made a statement in the chambers of the circuit judge, in the presence of the judge, prosecuting attorney, sheriff, and perhaps others. This statement was in conflict, in part, with appellant's testimony on the trial. The witnesses present, except appellant, when the statement was made, testified that it was voluntarily made and that no undue influence was used to elicit it. Appellant testified that he made the statement under duress. There being a conflict in the

evidence as to whether the statement was voluntarily made, the trial court admitted it, over the objection and exception of appellant, under the following injunction, which was the court's 7th instruction:

"If the defendant or any of the witnesses have at other times made statements which contradict or do not agree with the testimony given in this trial, you should, in weighing and considering the effect of such contradictory statements on the testimony in this case, carefully consider all of the circumstances under which such contradictory statements were made and whether or not such witnesses were subjected to any undue influence, coercion or intimidation, or were laboring under the influence of dread or fear, and also the physical and mental condition of the witnesses at the time such contradictory statements were made, if such statements were made." We think, under the principle announced in the case of *Henry* v. *State,* 151 Ark. 620, it was proper to admit the statement, with the restrictions contained in the court's 7th instruction. In the case referred to the court said: "The testimony was sufficient to justify the court in submitting it to the jury, but appellant, as before stated, had a right to have the jury consider the question whether or not it was a confession voluntarily made."

Lastly, appellant contends that his rights were prejudiced by the following statements of the prosecuting attorney made in closing the argument, to-wit: "I know he is guilty, I am willing to meet my God in the next hour knowing that Hughes is guilty, because I am thoroughly convinced. I have examined the testimony and know so much about it, and know things that never get to anybody else." When this statement was made, the counsel for appellant objected, and the court stated that the argument of the prosecuting attorney was improper and the jury should not consider it. The statement was an attempt on the part of the prosecuting attorney to testify. He, in effect, said that he was in possession of facts which could not be revealed to the jury, but which riveted con-

viction upon appellant. Coming from a sworn official, the remark was calculated to make a deep impression upon the minds of the jurymen. It cannot, perhaps, be classed with remarks the effect of which cannot be removed even by a solemn admonition of the court, but it was certainly a flagrant violation of the right of appellant to a fair and impartial trial vouchsafed to him by the Constitution and laws of the State of Arkansas. Considering the highly prejudicial character of the remark, its effect could not be removed by a mild admonition of the court. We think the trial court, in the exercise of a sound discretion, should have challenged the statement, with such comment as the exigencies of the occasion demanded. He might have said that it was the sworn duty of the prosecuting attorney to reveal all the facts within his knowledge, and his failure to do so would have been proof conclusive that he had no such information; or he could have stopped the trial and required the attorney to establish the facts in his possession by competent testimony. Either course would have erased the ill effects of the remark from the minds of the jury, but, in the opinion of the majority, the mild admonition of the court, as indicated by the language used, did not meet the exigencies of the particular situation.

For the error indicated, the judgment is reversed and the cause is remanded for a new trial.

McCulloch, C. J., dissents.

Wood, Hart, and Smith, JJ., concur.

Mr. Justice Wood holds that the remarks of the prosecuting attorney were so flagrant that their prejudicial effect could not be removed at all, and that the only way to cure the error was to grant a new trial.

CONCURRING OPINION.

Hart, J. It is conceded by the Attorney General that the result of the questioning of the defendant by the deputy prosecuting attorney and the sheriff in the chambers and in the presence of the circuit judge elicited

testimony which was damaging to the defendant and contrary to some of the testimony given by him at the trial.

Judge SMITH and myself think the admissibility of the confession in evidence was, under the circumstances, necessarily prejudicial to the rights of the defendant. Although we have found no case precisely in point, we believe that the court should not have admitted the confession in evidence at the trial.

W. R. Downing, the sheriff of Garland County, testified that he had an interview with the defendant, Hughes, in the chambers of the circuit judge in the Garland County courthouse on Sunday morning after the arrest of the defendant; that Judge Wood was present and the defendant, Hughes, made certain statements regarding the case and made them of his own volition.

On cross examination the sheriff stated that this was on Sunday morning after the Saturday night before when they had the defendant in the sheriff's office and questioned him there. Downing further stated that when he first arrested the defendant the latter stated that he did not have anything to say; but could wait until he saw his attorney before making any statement.

On the Sunday morning in question, Bumpass, the deputy prosecuting attorney, had the defendant brought up to the judge's chambers in the courthouse so that he could talk to him. The defendant at the time was a prisoner in jail.

According to the testimony of Downing he had previously told the defendant that if he was not guilty he ought to tell them what he knew about it, and that if he was guilty, not to say anything.

According to the testimony of the defendant, he refused to make a statement when first arrested and carried to the jail, saying that he wished to see Mr. Walker of Fayetteville, whom he had sent for to be his attorney. The sheriff called him a damned old crook, a murderer, and a liar. He also threatened to turn him

over to a mob in Montgomery County. The prosecuting attorney questioned the defendant in an inquisitorial manner and at times would curse and abuse him.

Burt Hall, who was present at the time Hughes declined to make a statement, said that Hughes said that he preferred to talk to his attorney first, and testified that the sheriff did not call Hughes a damned old liar and a crook. The sheriff did tell Hughes, however, that if he was not guilty himself he knew who was guilty and asked him why he did not tell it.

A little later the sheriff said that if the old man was not going to tell the story, he might just as well call up the Montgomery County men and let them come and get him. Sometime later the old man commenced to talk to them about the case. The sheriff said to him: "If you are a minister and a Christian and you are not guilty, you ought to tell us something about as who is the guilty party." The question of a mob was discussed in the presence of the defendant, but the witness said that he didn't recollect that the sheriff or any body else threatened the defendant with a mob. It was also shown that the defendant was very nervous and excited and was weak, tired and hungry at the time he was questioned on Saturday night.

The defendant was a witness for himself at the trial. According to his testimony given at that time, the prosecuting attorney abused him very much, and when they took him out of jail he appealed to a man named Floyd not to let them take him to be questioned. Floyd answered him that the prosecuting attorney had a right to take him to the courthouse to question him.

We think the evidence of the sheriff and of Hall shows that the alleged confession of the defendant was secured by the indirect threats of those having authority over the defendant when he was arrested. The evidence for the State shows that the defendant was sixty-four years old and was tired, hungry and weak when arrested. When they questioned him on Saturday night

he was nervous and excited. Something was said about a mob in Montgomery County. The sheriff told him that it was his duty to speak.

The sheriff threatened to send the defendant back to Montgomery County if he did not speak. He said that if he did not have anything to do with the killing it was his duty to speak, but that if he was guilty he need not speak. This did not amount to a warning. On the other hand it was perhaps the most effective way the sheriff could have adopted to obtain a statement from the defendant.

It is true that we have held that a statement obtained by questioning the defendant and the fact that he was not cautioned that the statement might be used against him does not render it inadmissible. But it must also be remembered that in this connection we have said that it is always better for the officer to give such warning in order to avoid suspicion of improper inducement. *Greenwood* v. *State,* 107 Ark. 568, and *Dewein* v. *State,* 114 Ark. 472.

It must be borne in mind that the questioning of the defendant was not for the purpose of satisfying the officers whether the accused was guilty or not; but he was subjected to the ordeal with the deliberate purpose of securing a statement to be used as evidence against him in the trial. It was doubtless done in good faith, but under the circumstances it was a case where their zeal clearly outran their duty.

It does not appear from the record that the circuit judge took any part in questioning the defendant in his office or that he knew of the inquisition by the prosecuting attorney the night before. This does not make any difference, however. Under the circumstances the prisoner should have been warned that he need not speak.

In *Blalock* v. *State,* 31 So. (Miss.) 105, Judge Whitfield said, that the scale of courage varies from Murat to Aguecheek and that a reasonable apprehension of fear is one that a man of average courage would entertain.

Viewed from the standpoint of the defendant, even under the testimony for the State, it is evident that he was overawed by the officers and that the powers of his mind were overcome by their persistent questioning of him and their unconcealed belief in his guilt.

His attorney was several hundred miles away and yet they persistently urged him to speak, although he protested that he first wanted to talk with his attorney. No person can be compelled to testify against himself in a criminal case, and a proper appreciation of the rights of the accused forbids the methods resorted to in this case to obtain testimony which was intended to be used against him at his trial. It was obtained by intimidation within the meaning of the law and could not be used against the defendant.

McCULLOCH, C. J., (dissenting).  The remark of the prosecuting attorney was undoubtedly improper, but I am unwilling to declare that the trial judge failed to adequately withdraw the remark from consideration by the jury so as to remove its prejudicial effect.  The court, on objection being made by appellant's counsel, stated that the remark was improper and that the jury should not consider it.  The inference from the objectionable remark was that there was other testimony which, if disclosed, would be damaging to appellant, but I cannot see any sound reason why the effect of such remark should be deemed so damaging and ineradicable that the admonition of the trial court was ineffectual to remove it from the consideration of the jury.  It seems to me, on the contrary, that the intimation of the attorney that he was in possession of other undisclosed facts was so unreasonable that men of ordinary intelligence would not accept it as true.  Such men on the jury must have treated it as a mere exaggeration on the part of the attorney, born of his overzealousness, and the statement was calculated, I think, to weaken the State's case in the minds of such men.  Be that as it may, however, the court admonished the jury not to consider the

statement.    Why wasn't that sufficient?   The majority
say that the court should have been more emphatic in
the admonition—should have stopped the trial and re-
quired the prosecuting attorney to prove what he had
stated, or should have told the jury that the prosecuting
attorney did not have any further proof.     .

The record does not, of course, reflect the court's
manner or tone of voice, but we should assume that they
were in keeping with the importance of the incident, and
that the court, in the exercise of discretion, did all that
was deemed necessary to remove the prejudicial effect
of the improper remark.   Counsel for appellant did not
ask for any further action by the court, and, so far as
the record discloses, were satisfied with what the court
did.  *St. L. I. M. & S. R. Co.* v. *Drumright,* 112 Ark. 452.
We should, at least, respect the trial court's exercise of
discretion in this regard, unless there has been a clear
abuse of that discretion, and I fail to discover any abuse,
in this instance.

The following language of this court, used under
similar circumstances, is appropriate: "The court
might have been a little more emphatic in instructing
the jury on the subject, but we do not think we can
safely circumscribe trial judges to such minuteness of ex-
pression as asked in this controversy.   They are present
conducting the trial, and it is only in case of manifest
abuse of discretion that they should be interfered with.
The same may be said, but with still more emphasis, as to
the court's refusal to reprimand the prosecuting attorney.
The persistency in disobedience of the rules of the
court, and contumaciousness in unbecoming conduct
generally, which alone would call forth a reprimand of
a public officer representing the State, are matters to be
dealt with cautiously, for fear that the remedy may
prove worse than the disease.   Each judge ought to and
does have a sound discretion when and where to em-
ploy this method of discretion, and this discretion ought
not to be controlled by appellate courts except in ex-
treme cases and where the control is clearly right and

proper." In *K. C. S. R. Co.* v. *Murphy,* 74 Ark. 256, we said: "As a general rule an objection by the opposing counsel, promptly interposed, followed by a rebuke from the bench and an admonition from the presiding judge to disregard prejudicial statements, is sufficient to cure the prejudice."

In *Browning* v. *State,* 84 Ark. 131, where the attorney for the State in a criminal prosecution had, in his argument to the jury, made a highly improper statement, Judge Battle, after referring to the rule laid down in the Murphy case, *supra,* said: "The appellant promptly interposed an objection to the remark of counsel, and the court directed the jury to disregard it, and *thereby* rebuked the counsel for making the same."

So in the present case the admonition of the court in sustaining the objection made by appellant's counsel was a rebuke to the State's attorney as well as a direction to the jury not to consider the remark.

It seems to me, with all respect for the opinion of my brethren, that it would have been a novel proceeding—one certainly not in keeping with the dignity of the occasion—for the trial court to tell the jury that the prosecuting attorney had no additional testimony tending to establish appellant's guilt, or to stop the trial and demand of the attorney proof of his statements. The opinion in this case is not, I think, in line with recent decisions of this court on the subject under discussion. *Fox* v. *State,* 102 Ark. 393; *Harris* v. *State,* 140 Ark. 13; *Sims* v. *State,* 131 Ark. 185; *Williamson* v. *State,* 131 Ark. 264; *Seaton* v. *State,* 151 Ark. 240.

We said in the cases above cited that we would assume that the jury heeded the admonition of the court and did not consider the improper remarks of the prosecuting attorney. A similar presumption should be indulged in the present case. The evidence is sufficient, we all agree, to sustain the verdict, and the judgment should not, in my opinion, be disturbed on account of the improper remarks of the attorney, which the court directed the jury not to consider.