Kansas City Southern Railway Company *v.* Larsen.

4-4907

Opinion delivered March 7, 1938.

*Joseph R. Brown* and *James B. McDonough,* for appellant.

*Shaver, Shaver & Williams, Sam T. & Tom Poe,* for appellee.

Mehaffy, J. This suit was begun in the Little River circuit court by appellee against the appellant, and it was alleged that on December 15, 1934, appellee was in the employ of the appellant engaged in interstate commerce, and while appellee was in the performance of his duty, in the examination and adjustment or regulation of the plugs and vents located on top of a refrigerator car, which contained a shipment of potatoes originating at DeRidder, Louisiana, and being transported to Detroit, Michigan, and after the refrigerator car had been placed in the Trigg street yard of appellant to be transferred and transported immediately to the connecting carrier, and while appellee was in the performance of his duty on top of the refrigerator car, the foreman of the switch crew carelessly and negligently, and without taking any precautions, ordered a cut of three cars including the refrigerator car, to be cut off from the other cars attached to the engine, and the refrigerator car was kicked with great force and violence against the cut of cars. It is also alleged that the foreman carelessly and negligently ordered this cut of cars made without giving appellee any notice or warning of his intention to do so, although the foreman knew, or could have known by the exercise of ordinary care, that appellee was on top of the refrigerator car, at and before the time the foreman ordered the cut to be made.

Several allegations of negligence were alleged, among others, that the foreman ordered this cut of cars kicked against the cars already on the switch track, and that, when the moving cars hit the cut with the air brakes set on them, an impact of great force and violence would be caused that would endanger the appellee's life, and as a result of the negligence alleged the cars were kicked with such great force and violence against the car upon which appellee was at work that he was thrown from

the top of the refrigerator car to the ground and painfully and permanently injured; that in falling from the refrigerator car, appellee fell against and onto an oil tank car, which was in front of the refrigerator car. He then describes his injuries at length, and states that they are permanent in character; that he has suffered great and excruciating bodily pain and mental anguish, and will continue to so suffer as long as he lives.

The appellant answered, denying all the allegations of the complaint, but admitting that at the time of the accident both the appellant and appellee were engaged in interstate commerce.

There was a verdict and judgment for $20,000, and this appeal is prosecuted to reverse said judgment.

It is stated by appellant that appellee violated the rules of the appellant; that he was an experienced yard clerk and knew when the cars started and how fast they were going; knew that there would be an impact when the cars stopped, and it therefore argues that, in the circumstances, the appellee assumed the risk and was guilty of contributory negligence.

Attention is first called to *Mayo* v. *Ft. Worth & D. C. Ry. Co.*, 234 S. W. 937. In that case the court said that the jury found that the appellant was injured by an unavoidable accident, and yet found that the master was negligent, although the servant was negligent, and that the negligence of both proximately caused the injury. The court said these findings were contradictory and, in effect, found nothing.

39 C. J., cited by appellant, simply defines the assumption of risk and distinguishes assumption of risk from contributory negligence.

The case of *Chicago, Great Western Ry. Co.* v. *Crotty*, 141 Fed. 913, 4 L. R. A. N. S., cited and relied on by appellant, was a decision under the Iowa statute, and has no application here.

It is earnestly contended, however, that appellee's injuries were the direct result of his breach of rules adopted for his safety, and appellant relies on the following rules, which were introduced:

"Employees are not required to or expected to incur any risk from which they can protect themselves by the use of care and judgment, but shall take the time and employ the means necessary under all circumstances to do their work in safety.

"Duties in, upon or about cars on either house tracks or yard tracks are to be performed so far as practical while cars are standing still. This refers to loading, unloading, applying, removing or checking seals, inspecting or handling ventilation, refrigeration or heater service, opening or closing doors, etc.

"Notify yardmasters, conductors or foremen, when practicable, before going upon cars standing in live tracks for taking end door seal records, manipulating vents or plugs, placing or removing heaters, etc., and obtain protection against cars being struck or moved. Otherwise keep constant lookout."

These rules relied on by the appellant contained no specific orders; but the first paragraph not only contains no specific order, but is a simple declaration of the duty imposed by law if there had been no rule. The second paragraph requires the performance, so far as practical, while cars are standing still. It does not state who shall determine whether it is practical or not. The third paragraph of the rules provides for notice to the yardmasters, conductors or foremen when practicable, and otherwise to keep a constant lookout. The man whose business it was to signal the cars to move was, according to the positive testimony of appellee, looking right at appellee, knew he was on the top of the car, and knew it was dangerous to kick the car while he was in this position, and yet without giving him any warning, caused the cars to be moved, resulting in the injury to the appellee. The rule says "notify yardmasters, conductors or foremen when practicable, before going on cars, standing in live tracks," etc.

If the appellee told the truth, and whether he did or not was a question for the jury and not this court, notifying the foreman would have been useless. Why should a man on the car notify a foreman that he was there when

the foreman was looking at him and was bound to know that he was there?

The next case to which attention is called by appellant is *Wolfe* v. *Pa. R. Co.*, 82 Fed. 2d 164. In that case a brakeman riding on a car higher than the usual cars, observed a low bridge, knew he had to stoop to go under it, knew all about the danger, and simply did not stoop low enough. The court said: "For a brakeman experienced in riding cars in a freight yard to see a bridge which he knew to be dangerous, and to take no sensible measure to keep from being hit, indicates an assumption of risk, if such legal relation is to be regarded as ever existing."

We are unable to see how that case has any application to the facts in the instant case. In this case the man was on the car in the performance of his duty. He could not perform that duty without getting on top of the car. The car was standing still when he got on, and the foreman knew he was on the car performing his duty.

In *Wheelock* v. *Freiwald*, 66 Fed. 2d 694, the court said: "Just prior to the movement of the cars in which Freiwald was fatally injured, he had assisted in placing a boxcar loaded with lumber on track No. 11. Following this movement the crew picked up one refrigerator car and four loaded oil tank cars. They were on track 3 or 4 and were moved to the lead track so that the tank cars might be shunted onto switch 11." The court then described the operation of shunting cars. The court further said: "The Federal Employers' Liability Act (45 U.S.C.A., §§ 51-59) does not make an employer an insurer of the safety of its employees, but to entitle plaintiff to recover, the defendants must have been guilty of some act of negligence which was the proximate cause of Freiwald's death."

Appellant calls attention to a number of other cases and states: "Bumps or jerks in the switching of freight cars are necessary incidents to such operations, and everybody riding freight cars must anticipate and guard against injuries from such conditions." But a person performing his duty on the top of a car that is standing

still, is not required to anticipate that the foreman will negligently cause the car upon which the party is standing, to be kicked, thereby throwing him off the car.

If appellee had been riding the freight car he would, of course, have been bound to anticipate that there would be bumps and jars when it struck other cars, but when the man whose business it was to cause the moving of the cars was looking at appellee and knew the danger to him if the car was moved without warning him, this was an act of negligence on the part of the foreman, that appellee was not required to anticipate.

It is next contended by appellant that even if it be assumed that appellant was negligent, appellee cannot recover because his injury resulted from his own negligence. Attention in this connection is called to *Young* v. *St. L. I. M. & S. Ry. Co.,* 100 Ark. 380, 140 S. W. 584. In that case the court said: "Where it was an established custom on a railroad, between the engineer and fireman that either, on going under the engine for any purpose, should notify the other, and a fireman went under his engine without notifying the engineer, and without his knowledge, and while there was injured by reason of the opening of a blow cock by the engineer, the negligence was that of the fireman, and he cannot recover for the injury, though the act of the engineer was negligent." It will be observed that in that case the fireman not only did not notify the engineer that he was going under the engine, but he was under there without the knowledge of the engineer.

The evidence in this case shows that the foreman not only had knowledge that appellee was on the car in the performance of his duty, but he was bound to know that if he caused the cars to be moved without warning to appellee, it might result in his injury. In other words, the act of moving the cars when he knew the position of the appellee, without warning appellee, was negligence.

In the case of *St. L. I. M. & So. Ry. Co.* v. *Steel,* 129 Ark. 520, 197 S. W. 288, the court discussed the rule as to presumption of negligence and burden of proof, in

cases where injury was caused by running of trains, and stated that there was no such presumption under the Federal Employers' Liability Act. 45 U.S.C.A., §§ 51-59. That has no application here. There is no presumption of negligence from the happening of the accident. The court in that case said: "But, while the court erred, in declaring as a matter of law that Steel was not guilty of contributory negligence if he went under the car without putting out the blue flag, provided he did so relying upon the promise of his foreman to protect him, it does not follow that the court should have also granted the prayers of the appellant for instructions which declared that Steel, under the circumstances mentioned, was guilty of contributory negligence as a matter of law, and that he could not recover." The judgment was reversed and the cause remanded for a new trial.

Appellant cites a number of other cases, but as we have already said, there was no specific order in the rules, and the evidence shows that the very person to whom appellee should have given notice, or one of the persons, was looking at him.

The proximate cause of the injury in this case was not the violation of a rule by the appellee, but the negligence of the appellant's agents in directing the movement of the car upon which appellee was at work, without giving him any warning.

But it is contended that appellant violated no duty to appellee. Appellee was asked this question: "Another (rule) about notifying the foreman . . . before going on cars on live tracks to manipulate vents and plugs I believe you testified that Mr. Goode looked straight at you?" The appellee answered: "Well, as straight as you are looking at me now." Question: "That is the reason you did not give him any verbal notice?" Answer: "That's the reason." Question: "After you got on top of the cars please tell the jury whether he could see you plainly or not?" Answer: "Looked right at me. He was far enough from the car, from the west side of the car, he could see me from —he could see my feet as far as that's concerned."

It is argued that before Goode or appellant owed appellee any duty, it was necessary that Goode should know that appellee was on the car. In this case the evidence shows that he did know it, but there is ample evidence to show that appellee was performing his duty in the customary way, and that the rule was habitually violated, and it also shows that Goode saw him on the car while it was standing still, saw him in the performance of his duty. It is true Goode was not required to inspect the tops of cars, or rather the evidence does not show that he was, but it was his duty to exercise reasonable care to avoid injuring the person on the car.

This suit is under the Employers' Liability Act, and that act specifically provides that railroad companies in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce for injury resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier.

Therefore, if the negligence of Goode caused in whole or in part the injury to appellee, under the Federal Employers' Liability Act the railroad would be responsible.

.We have repeatedly held that, since the Federal Employers' Liability Act does not define negligence, the question of whether the acts complained of amount to negligence is to be determined according to the common law and according to the rules prevailing in the Federal courts as to what constitutes negligence under the common law, and we said: "However, there is no difference between the decisions of the Federal court and this court as to what constitutes negligence." *Mo. Pac. Rd. Co.* v. *Skipper,* 174 Ark. 1083, 298 S. W. 849.

Whether Goode was guilty of negligence which caused the injury to appellee, and whether appellee was guilty of negligence were questions of fact properly submitted to the jury, and their verdict is conclusive on the question.

The verdict of a jury cannot be set aside by this court because of insufficiency of the evidence, if there is any substantial evidence to support the verdict.

This court, in the case of *Mo. Pac. Rd. Co.* v. *Remel,* 185 Ark. 598, 48 S. W. 2d 548, and also in the case of *St. L.-S. F. Ry. Co.* v. *Smith,* 179 Ark. 1015, 19 S. W. 2d 1102, reaffirmed the holding of this court in the Skipper case with reference to the manner in determining negligence.

A great many cases are cited and relied on by appellant with reference to the necessity of giving signals in switching operations, but all of them are cases where the persons in the operation did not have reason to believe that other employees were in danger, or did not know they were in danger.

In the case of *Gildner* v. *B. & O. R. Co.,* 90 Fed. 2d 635, the court, in discussing the violation of rules, said: "Moreover, that aside, this rule was no more than a general cautionary regulation; quite different from those whose violation is a bar as distinct from contributory negligence. It is only when the rule prescribes specific conduct that disobedience has so grave a consequence; all cases in the Supreme Court have been of that kind; we think the same is true of lower courts. Indeed to hold that by enacting general admonitions of care as rules, a road can make all carelessness a bar, would repeal § 53 of Title 45, U. S. Code."

The rules involved in this case constitute a mere general, cautionary regulation, and do not prescribe specific conduct. There is evidence to the effect that they had been habitually violated, and that appellee's conduct was the same as usually characterized men performing the duties that he was then performing. To hold that Goode could negligently direct the movements of the car, whereby appellee was injured, and that the existence of the rule relied on would relieve the company from liability, would in effect repeal the Employers' Liability Act.

The appellee was asked this question: "You knew of this one (rule), 'notify yardmasters, conductors or

foremen, when practicable before going upon cars stand-
ing in live tracks for taking end door seal records, manip-
ulating vents or plugs, placing or removing heaters, etc.,
and obtain protection against cars being struck or moved.
Otherwise keep constant lookout,' you knew of that
rule?" He answered: "Yes, sir, and I lived up to
that."

It is urged that this judgment should be reversed
because of improper argument of appellee's counsel. The
attorney for appellee said: ". . . I'll bet you never see
the general manager of the Kansas City Southern here
again in any lawsuit. When his private car rolled up
over there with the fan-fare there was around it, and
his chefs with their white caps on, and his liveried flunk-
ies to wait on him, I thought maybe the President was
here. Not the President of the Kansas City Southern,
but the President of the United States. . . . They regard
this as an important lawsuit."

The appellant objected to this argument and the at-
torney for the appellee then stated: "I withdraw it and
ask the court to admonish the jury not to consider it."
Thereupon the court said: "The jury will not consid-
er it."

There were some further remarks by the attorney
for the appellee made in the argument of the case which
were objected to by the appellant, and the court told the
jury not to consider the statements.

This court said in a very recent case: "This court
has been called upon in many cases to determine whether
remarks of counsel were improper, many of which have
been reversed and others sustained as properly within
the privilege of counsel.

"Because of the infinite variety of the alleged im-
proper remarks complained of in the adjudicated cases,
no hard and fast rule can be laid down on the subject.
The control of the conduct of the trial is within the sound
judicial discretion of the trial judges, and a wide range
of discretion must necessarily be allowed them in deal-
ing with the subject, for they can best determine at the
time the effect of any improper conduct or the alleged

unwarranted language of counsel. This discretion, of course, is not an arbitrary one, but a judicial discretion, the exercise of which is a matter of review.

"In determining whether the conduct or language permitted to be indulged in is ground for reversal, the true test appears to be whether an undue advantage has been secured which has worked a prejudice to the losing party not warranted by the law and evidence of the case." *McCaskey Register Co.* v. *McCurry*, 181 Ark. 649, 26 S. W. 2d 1108.

We do not think the trial court abused his discretion or that any prejudice resulted to the appellant by the argument objected to.

According to the evidence appellee did not get on the car while it was being switched, but he got on the car when it was standing still. It had to be inspected in that manner. The evidence also shows that it had to be shipped out immediately. There was no other manner in which the appellee could have inspected it, and if it occurred as appellee's evidence indicates it did occur, the appellant was guilty of negligence causing appellee's injuries. Whether it did occur this way was a question of fact for the jury. The credibility of witnesses and the weight to be given to their testimony are questions for the jury and not for the appellate court.

Appellant also contends that the court erred in giving certain instructions at the request of the appellee, and erred in refusing to give certain other instructions at the request of appellant. The instructions are long, and we do not set them out; but we have carefully examined all the instructions requested, given and refused, and we have reached the conclusion that the court did not err either in giving or refusing instructions, and that the questions at issue were fairly submitted under instructions that could not have misled the jury.

It is finally contended by the appellant that the verdict is excessive. The principal argument, however, made by appellant on this question, is that on the first trial the jury gave a verdict of $8,000 and on the second trial $20,000.

The evidence shows that appellee, when injured, was 49½ years of age and had an expectancy of 21.27 years. He was working seven days a week, and in addition to his earnings in working for the appellant, he also earned $600 or $700 a year at other work; and assuming that he would have continued to earn as much as he was earning at the time, his earnings would have been approximately $20,000. The evidence shows that appellee was permanently disabled, and suffered great pain from his injuries. If he had not been injured, of course no one could tell whether his earnings would increase or decrease. The probability is that they would have increased for a while and then decreased, but these were questions for the jury.

It is argued, however, that the remarks of the attorney increased the amount of the verdict. The court admonished the jury that they must not consider the statements of the attorney, and the presumption is that they did not. Not only were they admonished by the court that they should not consider the statements objected to, but they were required to take an oath to truly try each and all issues submitted to them.

Section 8314 of Pope's Digest provides the manner of selecting petit jurors and says they must have the same qualifications as prescribed in § 8312. That is the section prescribing the qualifications of grand jurors, and the petit jurors must have the same qualifications. They must be of good character, of approved integrity, sound judgment and reasonable information. The presumption is that the jury selected by a trial court possesses these qualifications. The law requires that they possess them, and if they do possess these qualifications, they are able to judge the credibility of the witnesses and the weight of their testimony, and under our system of jurisprudence they are the only persons, provided by law, for determining these questions.

We find no error, and the judgment is affirmed.

GRIFFIN SMITH, C. J., dissents. BAKER, J., concurs.