SHROEDER *v.* JOHNSON.

5-2541                                    352 S. W. 2d 570

Opinion delivered January 8, 1962.

*G. Byron Dobbs* and *J. Sam Wood,* for appellant.

*Sexton & Morgan* and *Charles R. Garner, Thomas A. Pedron,* for appellee.

PAUL WARD, Associate Justice. This is a highway intersection accident case. Appellant, George Shroeder, was driving east on a secondary road where it intersected Highway number 45 running north and south when his car collided with an automobile going north on Highway 45 being driven by one of the appellees, Arlene Johnson. The Johnson car was owned by her husband, T. J. Johnson, one of the appellees; appellees Billy Wayne Johnson and Mary Imogene Johnson were passengers in the car. Appellees filed suit against appellant for damages, claiming that appellant was negligent in failing to yield the right of way, in failing to keep his automobile under control and in failing to keep a proper lookout. There was a jury trial resulting in judgments in favor of appellees in the following amounts: Arlene Johnson, $2,853.23; T. J. Johnson, $790.83; Billy Wayne Johnson, $300.00; and Mary Imogene Johnson, $2,230.40.

Appellant has appealed to this Court seeking a reversal based on two assignments of error, viz.: *One,* the trial court erred in its refusal to direct a verdict in favor of appellant at the close of all the testimony; *Two,* the trial court erred in refusing to grant a mistrial based on the introduction by appellees of improper testimony. These points will be discussed in the order named after first summarizing the factual background.

*Background Facts.* The accident happened on December 17, 1960 about four miles south of the City of Fort Smith. Highway 45 is a principal traffic artery with a speed limit of 45 miles per hour at the intersection involved. On this occasion appellees, who frequently travelled Highway 45, were travelling north as they approached the intersection. Appellant, the owner and operator of the Downtown Hotel at Fort Smith, was driving his car east on what appears to be a secondary road. As he approached Highway 45 there were three objects on his right side: One was a stop sign, indicating that he should stop before he entered Highway 45; this sign was approximately 20 feet west of the west edge of the pavement on Highway 45. The second object was a telephone pole apparently two or three feet west of the stop sign. The third object was a rather large advertising sign apparently approximately two feet west of the telephone pole. This sign was apparently about four or five feet in length and 1 1/2 feet in width, hanging parallel with the secondary road. (The information relative to these objects, their locations and sizes is taken from photographs introduced into evidence by appellees and from oral testimony in the case.)

It is the contention of appellees that they were travelling approximately 45 miles per hour (the legal speed limit) as they approached the intersection, and did not see or realize that appellant's car was attempting to cross the road in time to stop or prevent a collision. It is appellant's contention that he stopped before entering upon Highway 45 and this is not disputed. He further contends that before he started up he looked to his right and saw no car approaching and then he approached

Highway 45 at a speed of five miles per hour, and still seeing no car to his right, he entered upon the highway; that after his car had crossed the center line of Highway 45, the front of appellee's car struck the right front door of his car.

*One.* The trial court was correct in refusing to instruct a verdict in favor of appellant because, in our opinion, the testimony presented a question of fact for the jury to resolve. The jury found negligence on the part of appellant and we think the record contains substantial evidence to support its finding.

Appellant's testimony was substantially as follows: I pulled up within four feet of the intersection and stopped and waited until two or three cars had passed, then I looked and saw no other cars in sight on Highway 45; then I started up at about five miles per hour to cross Highway 45, going not less than 10 miles per hour; when the middle of my car was across the center line of Highway 45, I saw a car coming from the south about 150 feet away; then the collision occurred. *Gertrude Beers,* aged 29, who was riding with appellant testified that he stopped about two minutes while two cars passed going south; that he then pulled out into the intersection; that she didn't consciously look to see, but she believed Highway 45 was clear at the time. *James D. Mickle,* a civil engineer, was the only other witness for appellant. He made a plat or diagram of the intersection. He stated that Highway 45 pavement was 23 feet wide and the stop sign was about 20 feet west of the west edge of the pavement. He also stated that a person standing at the intersection could see a car coming from the south a distance of 465 feet away.

*Arlene Johnson,* the driver of appellee's car testified that she was familiar with Highway 45 at the scene of the accident since she drove over it frequently on her way to work in Fort Smith; on this occasion she drove 45 or 50 miles per hour until she came to the caution sign of 45 miles per hour when she reduced her speed accordingly; when she approached the intersection she

first saw appellant's car between the advertising sign and the stop sign; at this time appellant's car was going slowly—about five miles per hour—as it approached Highway 45, and she let up on the gas; when she was about 70 feet from the intersection and saw appellant nearing the edge of the highway without stopping, she applied her brakes and honked her horn, and then the cars collided; the day was clear and sunny. *Imogene Johnson,* who was in the car with Arlene, testified that when they came over the rise (about 465 feet south of the intersection) she saw appellant's car near the stop sign approaching the intersection, and when they were within about 85 feet of the intersection she noticed Arlene apply the brakes and blow the horn, and appellant proceeded onto the highway.

From the above it appears there was a conflict in the evidence on a vital point. According to appellant, he stopped two minutes within four feet of the edge of Highway 45, he looked and saw no car in sight, and then he drove onto the highway. Arlene and Imogene Johnson said they saw appellant's car near the stop sign about 20 feet west of the edge of Highway 45, the car was moving and didn't stop before entering the highway. The jury had the right to believe appellees' testimony and disbelieve the testimony of appellant, which they evidently did in this case. It appears to us there are certain facts and circumstances tending to support the jury's judgment. Gertrude Beers who was in the car with appellant did not corroborate his testimony on the vital point, i. e., that he stopped within four feet of the highway and that he looked for traffic. Also, if the jury believed Arlene and Imogene were able to see appellant's car even when it was 20 feet from the intersection it had a right to believe appellant could have seen appellee's car if he did actually look south on the highway when he was within four feet of the intersection. In other words, the jury had a right to conclude appellant failed to exercise due care, either to stop close to the highway or to look for oncoming traffic, or both—a duty imposed on him under the Court's Instruction No. 4 given without

objection. In this connection, we think the following quotation from *Ness* v. *Males,* 201 Md. 235, 93 A. 2d 541, 543, is applicable:

"We have held that the statutory obligation to yield the right of way at a stop intersection, imposed upon the unfavored driver, is not discharged by a mere stop but extends to the entire passage across the favored highway, and that the favored driver using a through highway is not required to slow down at an intersection or bring his vehicle under such control as to be able to stop, upon the assumption that an unfavored driver will fail in his duty."

*Two.* Appellant's contention that the trial court erred in refusing to grant a mistrial is based on a portion of the record set out hereafter. While appellant was being questioned by appellees' attorney on cross examination the following occurred:

BY MR. GARNER:

"Q. Two questions: Mr. Shroeder, do you have a room in that hotel that is called the 'trick room'?

"A. No.

"Q. You don't get paid $2.00 for every date that's kept in there?

"A. We only rent rooms, as far as the hotel management is concerned.

"Q. Mr. Shroeder, do you want to keep for your own information this rap sheet here. Just stick it in your pocket. I don't want to even give it to the jury."

Mr. Dobbs: "Well, if you want to be insinuating you might as well put it in."

Mr. Garner: "All right, let him read it."

Mr. Wood: "No, let me see what it is."

Then outside of the presence of the jury, the following occurred:

Mr. Dobbs: "Now I want to make an objection to the insinuation of counsel for plaintiff in this case about a 'rap sheet', and ask for a mistrial because what he has produced is something in his own handwriting. It doesn't purport to be anything about anybody except what he wants to say."

Mr. Garner: "That's a rap sheet on Frankie Sue Carter."

Mr. Dobbs: "Who made it?"

Mr. Garner: "I did, off of the official records. That's the woman he was married to and this is the record compiled during the course of their marriage."

The Court: "On cross-examination, if he wants to ask about these things, but I think it's unfair to approach it in the way he did—to leave this innuendo when nobody knows what it is."

Mr. Garner: "I'll withdraw it then."

The Court: "And I'll have to instruct the jury to disregard it."

Mr. Garner: "That will be all right."

Mr. Dobbs: "We still request a mistrial, and save our exceptions."

Thereupon the court gave to the jury the following admonition:

"Ladies and gentlemen, counsel just handed to this witness a piece of paper and referred to it as a rap sheet. Now, that paper is not being offered in evidence by counsel. It is therefore my duty to instruct you that it is incompetent, and you are to disregard the sheet having been produced or any reference having been made to it in reaching a decision in this case."

Although appellant did not ask for a mistrial after the admonition was given to the jury, we think he has properly saved his objection. As previously set out, after the court stated he would admonish the jury, appel-

lant said: ''We still request a mistrial, and save our exceptions''. It would have been a futile thing to repeat the statement after the admonition was given. The trial court could not have been misled as to appellant's position.

We have repeatedly held that the matter of granting or denying a mistrial lies within the discretion of the trial court. See *Briley* v. *White,* 209 Ark. 941, 193 S. W. 2d 326. At page 943 of the Arkansas Reports the Court said:

''Much latitude must be given to the trial court in handling matters of this kind, and, in the absence of a showing of abuse and discretion or a manifest prejudice to the rights of the complaining party, this court will not reverse a judgment on account of the action of the trial court.'' [Cases cited.]

On the other hand, we have also held the exercise of such discretion is subject to review. See *Vaughan* v. *State,* 58 Ark. 353, 24 S. W. 885; *Hughes* v. *State,* 154 Ark. 621, 243 S. W. 70; *Kansas City Southern Ry. Co.* v. *Larsen,* 195 Ark. 808, 114 S. W. 2d 1081; and *Kansas City So. Ry. Co.* v. *Murphy,* 74 Ark. 256, 85 S. W. 428. In the last cited case, although this Court did not reverse the trial court, it did discuss subject question at length, citing numerous cases, and commented on the applicable governing rules. In so doing, the Court, among other things, said:

''There is, however, a class of cases which present argument and remarks so flagrantly prejudicial, or counsel may be so persistent in their impropriety, that the commendable efforts of the trial judge to eradicate the evil effects of them will be unavailing. In such event, then, a new trial is the only way to remove the prejudice, notwithstanding the judge may have reprimanded, or even fined, the offending attorney and positively and emphatically instructed the jury to disregard the prejudicial statements.''

In the *Vaughan* case, *supra,* the Court said:

450

". . . whenever it occurs to us that any prejudice has most likely resulted . . . we shall not hesitate to reverse on that account."

In the case under consideration, as in most situations of this nature, we cannot say with certainty that the jurors were prejudiced by the reference to the "rap sheet", but we are less sure that they were not. Definitely the manner in which the reference was made was improper, and it left open to the jury a broad field of speculation as to appellant's character and possibly his criminal record. The admonition of the court did not tell the jury what and to whom the "rap sheet" referred, and if it had done so the prejudice probably would have been even greater.

It is therefore our conclusion that the trial court erred in not granting a mistrial, and its judgment is accordingly reversed, and the cause is remanded.

McFADDIN, J., dissents as to reversal.

ED. F. McFADDIN, Associate Justice, dissenting. I dissent as to the reversal. While I dislike the courtroom tactics about the "rap sheet", nevertheless, I can not say that the Court's admonition to the jury was ineffectual to remove the harm. The modest verdicts received by the appellees indicate rather strongly that the Court's admonition did remove the harm about the "rap sheet". Therefore, I would affirm the judgments herein.