BILLY LAWSON *v.* NINA MAE STEPHENS

5-3977                                         407 S. W. 2d 917

Opinion delivered November 14, 1966

*N. M. Norton,* for appellant.

*Fletcher Long,* for appellee.

PAUL WARD, Justice. This litigation grows out of a collision between two cars at the intersection of Division Street with Washington Street (which is also Highway No. 1) in Forrest City. The pertinent facts presently set out appear not to be in dispute.

*Facts.* Washington Street (a through trafficway) runs approximately north and south. It is intersected by Division Street which runs approximately east and west. At this point there is a "stop" sign on the right (or south) side of Division Street and on the west side of Washington Street.

At about 1:30 p.m. on December 24, 1964 Billy Lawson (appellant herein) was driving his car easterly on Division Street, and, as he approached the intersection, a car driven by Nina Mae Stephens (appellee herein) on Washington Street also approached the same intersection from the north. Appellant entered upon Washington Street and, in doing so, was struck by the car being driven by appellee. There was a conflict of evidence as to whether appellant stopped at the "stop" sign. In any event appellee was injured and her car was damaged.

Suit was filed by appellee against appellant, and, in her complaint, she alleged negligence in that appellant failed to keep a proper lookout for vehicles on the public highway; he failed to "yield the superior right-of-way" to appellee in violation of the state law, and; he was driving at an excessive speed. A jury trial resulted in a judgment in favor of appellee for $75 damage to her car and $14,125 resulting from personal injuries.

On appeal to this Court appellant relies on only two

general points for a reversal. *One* pertains to instructions and *Two,* the judgment was excessive.

One (*a*). Appellant says: "The rights of drivers entering an intersection were erroneously defined by Instruction No. 3."

The above mentioned instruction, in pertinent parts, reads:

"The law requires that the driver of a vehicle approaching a stop sign shall stop, and, after having stopped, shall yield the right of way to any vehicle on the through street which has entered the intersection or which is approaching so closely as to constitute an immediate hazard. *When he has so yielded and has time to move safely across the entire intersection he may then proceed,* and the drivers of all other vehicles approaching the intersection shall yield the right of way to him." (Emphasis ours.)

This instruction is in accord with AMI 905.

Appellant's objection to the above instruction relates to that portion of the instruction which we have emphasized. The burden of appellant's argument is to the effect that these words are an addition to the "statute" and consequently place an unauthorized burden on him in this case. For reasons mentioned below we are unable to agree with appellant.

1. Appellant relies on language used in Ark. Stat. Ann. § 75-623 (a) (Repl. 1957), enacted in 1937, which reads:

". . . but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said highway shall yield . . . ."

However, appellant overlooks two important items. One, the above section does not seem to be dealing with a

stop sign situation, and, two, the said section has been superseded by Ark. Stat. Ann. § 623 (a) (Supp. 1965), enacted in 1959. The pertinent statute now is Ark. Stat. Ann. § 623 (b) (Supp. 1965).

2. While the pertinent statute just mentioned does not contain the exact questioned language used in Instruction No. 3 (AMI 905) we think the meaning is essentially the same. The obvious purpose of both the statute and AMI 905 is to help the less favored driver to get completely across the intersection without having a wreck.

3. In our opinion Instruction No. 3 and AMI 905 are justified in view of what we said in *Shroeder* v. *Johnson*, 234 Ark. 443 (p. 447), 352 S. W. 2d 570. Consequently it was not error for the trial court to give said Instruction No. 3.

*One (b)*. We find no error in the trial court's refusal to give appellant's requested Instruction No. 1 which, in essence, would have put a duty on the favored driver (on the through highway) to keep a lookout and not to assume due care on the part of the unfavored driver. We think the requested instruction was superfluous because the trial court (as previously mentioned) gave AMI 905, a portion of which reads:

"A driver using a through street or highway has a right to assume, *until the contrary is or reasonably should be apparent,* that another driver will obey a stop sign." (Emphasis ours).

To the same effect was Instruction No. 4 (AMI 907) which was also given to the jury.

*One (c)*. The trial court gave, with conformatory modifications, AMI Instructions 2201, 2202, 2204, 2205, 2206, 2207, and 2210, dealing with extent and duration of injury, medical expenses, pain and suffering, loss of earnings, present value of future earnings, etc. We re-

frain from discussing the merits or demerits of any of the instructions because we fail to find (with one exception) any objection in the record.

*One* (*d*). The trial court instructed the jury (without objection or offer of a substitute instruction) regarding the present value of future earnings as follows:

"The value of any loss of earnings that have already been lost and the present value of any future earnings that may be reasonably certain to be lost."

In a related instruction the trial court also told the jury that "the statute, section 50-705, provides that the *average* life expectancy of a person forty-two years of age is twenty-nine years." (Our emphasis.) It is the contention of appellant that the court committed reversible error in giving this instruction.

While we are not commending the practice of the trial court in reading statutes to the jury, and while we are not holding that said statute was intended for a situation of this kind, we do not believe reversible error has been shown. In the first place it has not been shown by appellant that the information given to the jury was incorrect, or just how it could have affected the jury's verdict. It was undoubtedly the kind of information which the jury needed to consider in order to arrive at a just verdict. Also, it appears the jury was given some discretion by the use of the word "average" used in the statute.

*Two*. Finally, appellant contends the jury verdict was excessive, but again we are unable to agree.

It was up to the jury to weigh the testimony and, based thereon, to fix the amount of damages. In appellant's brief it is pointed out: Medical expenses, $884.74; appellee was in the hospital for one week where she received medical treatment; she was knocked unconscious, with blood running down her face; her chest, head, legs

and arms were injured; she suffered pain, and had trouble sleeping; she was unable to work because of pains in her head, chest and back; she had some broken ribs; she couldn't stay on her feet long at a time, and; she had a cough and high blood pressure. Before her injury she worked regularly, earning $52 per week—not including overtime. There is evidence that her losses to date of trial amounted to about $3,525, and that the loss would continue in the future—with a life expectancy of twenty-nine years.

In view of the above we cannot say the jury verdict is not supported by substantial evidence.

Affirmed.