JUAN ERNEST PEREZ *v.* STATE OF ARKANSAS

5551                                          463 S. W. 2d 394

Opinion delivered February 22, 1971

*Sam L. Anderson,* for appellant.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. The primary question on this appeal involves the validity of a search which resulted in the seizure of certain evidence in the trial of appellant on the charge of unlawful possession of cannabis in violation of Ark. Stat. Ann. §§ 82-1002 and 82-1020 (Supp. 1969). The search was based on a search warrant issued by the circuit judge on December 16, 1969. The warrant was supported by an affidavit made by Sergeant Charles E. Evans of the Hot Springs Police Department. Appellant contends that the description of the place and person to be searched was unconstitutionally vague and that the warrant was invalid as a blanket search warrant. Under authority of the search warrant Evans and other officers accompanying him searched certain automobiles and an apartment occupied by appellant. Incriminating evidence was found in the apartment and in the automobiles. We find that the search warrant was invalid as to the search of the apartment but valid as to the search of the automobiles.

We have recently had occasion to consider the particularity with which the place to be searched must be described in order to meet constitutional standards. See *Easley v. State,* 249 Ark. 405, 459 S. W. 2d 410. There we said that common sense dictates that the constitutional requirement is designed to aid the officers in locating the right property as well as to protect innocent property owners from unreasonable searches and seizures and to prevent officers from searching the wrong property. We found valid a search warrant describing the property as the house occupied by Bud Easley in or near Hiwassee. The house searched was located on a farm near the community of Hiwassee. Since the description was sufficient for any person familiar with the locality to identify the premises described under the circumstances, we held the search warrant valid.

Quite a different factual situation exists in the case now before us. The officer's affidavit recited that he had been told by a confidential and reliable informer "that Jack Eaton has in his possession the following illegal substances in his possession; to-wit: marihuana, amphetamines, pills, cocaine, dextroamphetamine, methamphetamines, concealed in his apartment located at the corner of Curl Street and Washington Street in Hot Springs, Arkansas, and in two automobiles; a black Ford Thunderbird bearing 1969 Kentucky License B67-413, and a red Volkswagen bearing 1969 Kentucky License M6-801."

The warrant recited that Evans had made affidavit "that he had reason to believe that on the person of Jack Eaton and on the premises known as Curl Street Apartments at Curl and Washington Streets and in a black Ford Thunderbird, Kentucky License Number B67-413, and a red Volkswagen, Kentucky License Number M6-801, at said address in the City of Hot Springs, County of Garland, State of Arkansas, there is now being concealed certain property, namely marihuana, amphetamines, pills, cocaine, dextroamphetamine, methamphetamines at a certain apartment located at the corner of Curl and Washington Streets in Hot Springs,

Arkansas, and in two automobiles; a black Thunderbird (Ford) Kentucky License B67-413, and a red Volkswagen Kentucky License M6-801, which are illegal drugs. The same being in the possession of Jack Eaton, the occupant of said apartment and the possessor of both of said automobiles. Approx. 3 lbs of marihuana and several bottles of said pills—valued at about $3,-000.00 which drugs were cartoned when brought to this address."

The circuit judge found that there was probable cause to believe that the property described was concealed on the premises and automobiles and that grounds for issuance of the search warrant existed. The search warrant commanded a search of the places and automobiles named forthwith.

There was no evidence that appellant had ever been known as Jack Eaton. The Curl Street Apartments consisted of seven apartments in the same one-floor structure and an additional apartment in an adjoining structure. The apartments in the same unit were numbered one through seven. Apartment 6 was rented to appellant under the name Jack Perez. No unit in these apartments had ever been rented to a person named Jack Eaton, and the manager of the apartments had never heard of anyone by that name.

There was testimony by the officers that, before obtaining the search warrant, they had watched appellant drive up to the apartments in the Thunderbird and go into the apartment they later searched. In spite of this, when the officers went to the premises around midnight to conduct the search, Lieutenant Norman Hall of the Hot Springs Police Department and Sergeant Doug Harp of the Arkansas State Police went to the manager's quarters (apartment 3), aroused the manager and her husband and inquired as to the whereabouts of Jack Eaton. When the manager denied knowledge of any such person, they told her that he owned the Thunderbird in the back drive. Her husband then told them that the owner occupied apartment 6, and she added that this man's name was Perez. Lieutenant Hall and Sergeant Harp did not go to any door except that

of the manager's quarters before going to apartment number 6. The officers explained that they could not actually see the door of the apartment they had reason to know Perez had entered while they were observing him before obtaining the warrant, and did not go onto the premises to obtain the number of the apartment for fear of making their suspect aware of their presence. The manager testified that apartment 6 was so located that an officer who knew its location would not have had to go to any other part of the building to reach it or to awaken anyone or to come to the office. Evans also testified that when he and Fletcher went to the back of the building where they thought the apartment was, the others went to the front because they were not completely certain they would find the person they were looking for.

Five officers assisted in the search. They found both of the vehicles described in the search warrant in the driveway to the apartments. Sergeant Evans recognized Perez as being the person called Jack Eaton by his informer from the informer's description. Lieutenant Hall and Trooper Fletcher searched the black 1964 Thunderbird bearing the license number stated on the search warrant. They found one package of a substance that they believed to be marijuana, which Hall identified at the trial. Fletcher described it as green vegetable matter which was in a clear plastic bag in the trunk of the Thunderbird. Hall gave a sample to Sergeant Doug Harp to take to the State Police laboratory. The keys to the Thunderbird had been obtained from Perez. Sergeant Evans, Sergeant Harp and Sergeant Brown searched the apartment. Fletcher placed Perez and a man by the name of Martin, who was present in the apartment, under arrest.

Both the state and federal constitutions prohibit the issuance of search warrants "except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized." As earlier indicated we do not feel that search warrants and supporting affidavits should be subjected to a hypercritical view in determining

whether or not they meet constitutional requirements. Yet the constitutional language specifically requires that the place to be searched be particularly described. It is not material here that the officers searched the "right" apartment, since the question is whether the apartment could be identified with particularity from the language used in describing it.

To say that appellant was not prejudiced because the search did not extend beyond his apartment, would overlook the fundamental basis of the constitutional requirements. We would thereby return to the thesis that illegally seized evidence is admissible, existing prior to *Clubb* v. *State.* 230 Ark. 688, 326 S. W. 2d 816, making admissibility dependent on success of the search and frustrating the primary purpose of the state and federal constitutional provisions. See *State* v. *Ratushny,* 82 N. J. Super. 499, 198 A. 2d 131 (1964); *United States* v. *Hinton,* 219 F. 2d 324 (7th Cir. 1955). It is too late to revert to pre-Clubb standards. The many subsequent developments reflected by many state and federal decisions so clearly bar this reversion that no citation, enumeration or discussion of them is appropriate.

The warrant for search of the apartment would undoubtedly have been valid if it had correctly named the person to be searched and the occupant of the apartment or otherwise contained a description from which he could be identified or if it had otherwise specifically designated the particular apartment to be searched. *Manley* v. *Commonwealth,* 211 Va. 146, 176 S. E. 2d 309 (1970); *United States* v. *Hinton,* supra; *Webb* v. *State,* 173 Tenn. 518, 121 S. W. 2d 550 (1938). Otherwise, the requisite particularity is wanting. See 4 Wharton's, Criminal Law and Procedure (Anderson) pages 177, 181, §§ 1553, 1556. A warrant with no more particular description than this one affords is void because it vests the officer with selective discretion in determining where he could search and thereby invade the property of strangers to the process. *Fance* v. *State,* 207 So. 2d 331 (Fla. 1968); *State* v. *District Court,* 70 Mont. 191, 224 P. 862 (1924); *Purkey* v. *Mabey,* 33 Ida. 281, 193 P. 79 (1920); *Brewer* v. *State,* 95 Okla. Crim. 256, 244 P. 2d 1154 (1952).

As pointed out by the state, the courts are generally agreed that a warrant for search of a subunit is not valid if it does not describe the subunit to be searched but merely refers to the larger multiple occupancy structure. The state also correctly states the following exceptions to the general rule recognized in some jurisdictions:

(1)     Where the warrant adequately identifies the subunit by naming the occupant;

(2)     Where the description of the subunit is sufficient to enable the executing officer to locate the premises with reasonable certainty, in spite of a slight omission or inaccuracy;

(3)     Where the deficiency in the warrant may be cured by a proper description in the supporting affidavit (although it is usually required that the affidavit be annexed or attached to the warrant).

See Annot. 11 A. L. R. 3d 1330 (1967).

Even if we recognized all these exceptions, we could not apply any of them in this case. Here the warrant gave no identification of the specific apartment except by the incorrect name of its occupant, who was not otherwise identified. For this reason it was fatally defective. See *People* v. *Young,* 100 Ill. App. 2d 20, 241 N. E. 2d 587 (1968); *Commonwealth* v. *Smyser,* 205 Pa. Super. 599, 211 A. 2d 59 (1965); *State* v. *Bass,* 153 Tenn. 162, 281 S. W. 936 (1926). We agree with the Oklahoma Court of Criminal Appeals that the insertion of a name in a search warrant incorrectly is not a fatal defect if the legal description of the premises to be searched is otherwise correct so that no discretion is left to the officer making the search as to the place to be searched. *Williams* v. *State,* 95 Okla. Crim. 131, 240 P. 2d 1132, 31 A. L. R. 2d 851 (1952). The defect in the name made this warrant, in effect, a Joe Doe warrant carrying no other identification of any particular person. Such a warrant is void when the premises described is a multi-

unit apartment house in which separate units are occupied by several different persons or families. *Linthicum* v. *State,* 66 Okla. Crim. 327, 92 P. 2d 381 (1939). We do not agree with the state's contention that the fact that an officer had seen the person answering the informant's description enter this apartment supplies the deficiency. Neither this fact nor the informant's description is mentioned in either the warrant or its supporting affidavit.

We do not mean to say that an officer unfamiliar with the premises or their location is strictly limited to information given on the face of the warrant to locate the place to be searched. If by reasonable effort or inquiry on the part of the searching officer the property described in the warrant can be located with certainty, the warrant meets constitutional requirements. *State* v. *Ratushny,* 82 N. J. Super. 499, 198 A. 2d 131 (1964); *Steele* v. *United States,* 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757 (1925). But the officer cannot rely on his knowledge not stated in either the search warrant or its supporting affidavit to cure a vitally deficient description of the property to be searched, even though he might do so where the error is only technical and there is additional descriptive language to identify the property. *State* v. *Daniels,* 46 N. J. 428, 217 A. 2d 610 (1966). The sufficiency of the description to permit identification of the premises with certainty by appropriate effort and inquiry must be decided upon the facts and circumstances prevailing in the particular case. *State* v. *Daniels,* supra; *Harris* v. *United States,* 331 U. S. 145, 67 S. Ct. 1098, 91 L. Ed. 1399 (1947). We do not find the description of the apartment sufficient in this case.

We find the search of the automobiles to have been valid, as they were sufficiently identified. *Miller* v. *State,* 89 Okla. Crim. 200, 206 P. 2d 245 (1949), reversed on other grounds, 90 Okla. Crim. 14, 209 P. 2d 890 (1949); *Prater* v. *Commonwealth,* 216 Ky. 451, 287 S. W. 951 (1926); *Hines* v. *State,* 275 P. 2d 355, 47 A. L. R. 2d 1440 (Okla. Crim. App. 1954).

Appellant also asserts that a mistrial should have

been declared because the deputy prosecuting attorney conducting the trial had discussed testimony to be given by Lieutenant Hall and Sergeant Harp with them during the noon recess in the presence of Sergeant Evans who had already testified. When Sergeant Evans left the witness stand, the court reminded him that he was "subject to the rule and not to discuss the case with anyone." No showing was made as to what actually took place except for the statement of the deputy prosecuting attorney, who said that he had made statements and directed questions to Hall and Harp, neither of whom had testified. His recollections was that he, Sergeant Harp and Lieutenant Hall had done all the talking and that Evans had not said a word.

We have uniformly held that, because of the wide latitude of discretion vested in the trial judge in granting or denying a motion for a mistrial, we will not reverse a judgment because of his action on such a motion in the absence of an abuse of that discretion or manifest prejudice to the complaining party. *Shroeder v. Johnson,* 234 Ark. 443, 352 S. W. 2d 570. We have applied these standards to questions involving violations of the rule sequestering witnesses. *Clubb* v. *State,* 230 Ark. 688, 326 S. W. 2d 816; *Harris* v. *State,* 171 Ark. 658, 285 S. W. 367. In the absence of any showing of prejudice to the defendant, we cannot say that the circuit judge abused his discretion in this instance.

Appellant contends that the verdict was not supported by substantial evidence. In view of our holding on the search of the apartment, substantial evidence must be found to support a verdict of guilt based only on the material found in the automobile. There seems to be no doubt that the Thunderbird belonged to Perez, or that marijuana was found in this vehicle. Perez was seen driving the vehicle onto the premises shortly before it was searched. Even though defendant testified that one Jimmy Martin had used this vehicle on previous occasions, the jury was presented with a fact question as to possession of this marijuana by appellant.

The judgment is reversed and the cause remanded for a new trial.

HARRIS, C. J., and JONES, J., dissent.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion in this case. I reach my conclusions from a re-examination of Article 2, § 15 of the Constitution, in the light of the facts in the case before us, rather than in the light of our previous decisions on different facts. Section 15 of Article 2 is as follows:

"Unreasonable searches and seizures. The right of the people of this State to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

It appears to me that the word "unreasonable" and the phrase "probable cause" have almost been interpreted out of § 15 of Article 2, while strict construction of the phrase "particularly describing" has been over-emphasized. I feel that the trend in judicial decisions on searches and seizures is bearing us far from constitutional boundaries; so far in fact, that we are losing sight of the intents and purposes of § 15 of Article 2, and I feel that the majority opinion in this case is a good example.

There is no question that Perez had a right to be secure in his person, house (apartment), papers and effects (even including the illicit drugs) against *unreasonable* search and seizure. I am of the opinion that the search was not unreasonable in this case and the majority does not say that it was. I am of the opinion that the warrant was issued upon probable cause and the majority does not say it was not. I am also of the opinion that the warrant particularly described the place to be searched and the person or things to be seized with sufficient clarity, but the majority say that it did not. So,

for that reason, the majority hold that the contraband drugs (already packaged and marked for quick sale) could not be used in evidence because they were seized under a warrant that only directed the officers to an apartment building and the apartment occupied by Jack Eaton.

The majority say that the warrant vested the officers with selective discretion. I do not agree. The officers had no discretion to search any apartment other than the one occupied by Jack Eaton, and they searched no apartment other than the one occupied by the man they recognized, by previous description, as Jack Eaton. Under the majority opinion, if the warrant had named Perez, the appellant could have sent the officers back for another warrant, while he disposed of the contraband, by simply saying "my name is not Perez."

It is at this point in the procedure where the facts in the case at bar become important, and it is at this point where I still adhere to the common sense doctrine we announced in *Easley* v. *State,* 249 Ark. 405, 459 S. W. 2d 410. The majority recognize the doctrine we applied in *Easley* but, in my opinion, they fail to follow it in the case at bar.

There is no question that the drugs were found and seized in the apartment occupied by the appellant who had registered and occupied apartment No. 6 as Juan Ernest Perez. It is also obvious that Eaton, or Perez, was using two names for different purposes. The police officers had a description of the appellant under the name of Eaton, along with the name and location of the small apartment building where he was staying, as well as a detailed description of the automobile he was driving and the illicit drugs he possessed. They observed Eaton, or Perez, as the man described to them, drive up to the building and enter an apartment. The officers went to the apartment building and while some of the officers inquired of the manager as to which apartment was occupied by Eaton, two other officers who had the search warrant in their possession, went directly to the door of the apartment previously entered by the appellant and although the occupant then said his name was

Perez, they searched the apartment, found the drugs and arrested the appellant. The trial court accepted the drugs in evidence but this evidence is rejected by the majority of this court because the search warrant did not describe the premises to be searched.

The majority indicate that the search would have been valid and the evidence admissible if Perez had been named in the warrant instead of Eaton, or if apartment "No. 6" had been specifically designated in the warrant, or if the apartment had been rented in the name of Eaton rather than Perez.

As I view the majority opinion, the object of the law is defeated by interpreting Article 2, § 15, as protecting the appellant's apartment and the drugs against *reasonable* search and seizure, rather than protecting his apartment, papers and effects against *unreasonable* searches and seizures. Certainly, if the police officers had barged into the wrong apartment not designated in the warrant, and had found contraband and arrested whomever they might have found in possession, the evidence thus obtained could not, and should not, be used in evidence against such person. It is that kind of search and seizure § 15 of Article 2 is security against. That is not what happened in this case. In this case the officers searched, and they only searched, the apartment occupied by the man they knew as Eaton, but who also goes by the name "Perez."

Regardless of past decisions, I am unable to concede that § 15 of Article 2 of the Constitution of this State permits a dope peddler to safely pursue his trade with impunity by simply renting an apartment for his base of operation under one name, removing the number from his apartment door as protection against a valid search warrant; then go into the street under another name and sell his packaged misery to all who are too young to know or too "hooked" to care.

I prefer to follow the constitution as I interpret it through the common sense approach announced in *Easley* v. *State,* supra.

I would affirm.

HARRIS, C. J., joins this dissent.