Bill SMITH *v.* Louise RAMSEY

74-84                                                    513 S.W. 2d 501

Opinion delivered July 22, 1974

*Albert R. Hanna,* for appellant.

*Nolan, Alderson & Jones,* for appellee.

FRANK HOLT, Justice. Appellee brought this action against the appellant seeking possession of certain cattle of the alleged value of $1,750. The appellant controverted the alleged ownership of the cattle. A jury resolved the issue in appellee's favor by awarding her $1,800, which was reduced by the trial court to $1,750 to conform to the amount sought by the appellee in her complaint. Appellant contends for reversal that the trial court erred in failing to grant a mistrial following the testimony of one of appellee's witnesses indicating that appellant had discussed with him a settlement offer. Likewise, error is asserted in overruling appellant's motion for a new trial.

Appellee's witness McCormick is related by marriage to appellee. He testified that following appellant's "first trial" that he told appellant that the cattle belonged to appellee, his relative. The appellant responded by claiming ownership. The appellant later came to him, McCormick, and offered $1,250 "to compromise" the case. At this point the appellant moved for a mistrial. The court then conducted an in chambers examination of McCormick. There he testified that he had discussed with appellant the disagreement of ownership three times since the controversy arose. One of these occasions was two or three days before the appellant's first trial pertaining to the possession of the cattle. Since then he had asked the appellant twice to make a compromise offer because his relative, the appellee, didn't want to send the appellant "to the pen". The offer of $1,250 compromise was finally made to him to transmit to the appellee. The trial court determined in chambers that the offer to compromise to appellee's "agent" was inadmissible. The court then proceeded to give a very comprehensive cautionary instruction to that effect and enunciated the policy reasons as to why compromise offers are inadmissible: i.e., it permits complete freedom of negotiations between parties and, therefore, discourages or settles litigation. When he inquired of the jurors if they could disregard the inadmissible testimony there was no response. The court told the jurors that he understood their silence to mean they could totally disregard the testimony about any offer of compromise.

Offers of compromise are inadmissible as evidence of

liability because of the strong policy interest in the settling of disputes before a trial. We have so held on several occasions. *Strahan* v. *Webb,* 231 Ark. 426, 330 S.W. 2d 291 (1959); *Folsom* v. *Watson,* 217 Ark. 158, 228 S.W. 2d 1006 (1950); *Cunningham* v. *Davis,* 203 Ark. 982, 159 S.W. 2d 751 (1942); *Lake* v. *Wright,* 186 Ark. 227, 53 S.W. 2d 233 (1932); *Hinton* v. *Brown,* 174 Ark. 1025, 298 S.W. 198 (1927). The rule is really akin to a privilege rather than a rule of competency. McCormick, Evidence § 273 (2nd. Ed. 1972). The one to whom or through whom the offer is made is not the decisive factor. The controlling consideration is the policy encouraging friendly adjustments of potential or actual litigation. Otherwise litigation would be instituted finally resulting in court trials with additional expense to the parties as well as further overloading our court dockets. The fact that the compromise offer in the instant case was not communicated to the appellee by an agent does not render it admissible. See e.g., *Pentz* v. *Penn. Fire Ins. Co.,* 92 Md. 444, 48 A. 139 (1901), where plaintiff's question to defendant's agent as to whether the agent had been authorized to offer a compromise was properly excluded, and *Harrison* v. *Dist. of Columbia,* 95 A. 2d 332 (D.C. Mun. Ct. App. 1953), where appellant denied paternity of an illegitimate child but offered to pay a thousand dollars to settle to the mother's brother who was neither the complaining witness nor her representative, held, evidence of offer was inadmissible.

In the case at bar, we note that appellee's counsel elicited from McCormick before the jury that he had discussed the ownership of the cattle with the appellant after "the first trial" at Farmerville. Appellant maintained the cattle were his. The witness was then asked if appellant later came to him and said anything further about the cattle. It was then that the witness responded that the appellant had made the $1,250 compromise offer. The jury returned a verdict of $1,-800 which was reduced to $1,750 to confrom with the allegations in the complaint.

Appellee agrees that a compromise offer as a general rule is inadmissible because of the strong policy reasons which encourage settlement of potential as well as actual litigation. However, appellee asserts that the cautionary instruction

given by the trial court was sufficient to remove any prejudicial effect. In the circumstances, we cannot say with confidence that the prejudicial effect of the compromise offer was completely removed and extinguished despite the meticulous and very thorough cautionary instruction. Appellant's motion for mistrial as well as his motion for a new trial based upon the prejudicial effect of the compromise offer should have been granted. It follows that the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

FOGLEMAN. J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I do not feel there was any prejudicial error in this case and I would affirm the judgment.

I am not at all certain the testimony on which the issue is raised was inadmissible. The witness McCormick was not shown to have been an agent of appellee. According to appellant's abstract, before objection was made he gave the following testimony:

> . . . . I discussed cattle owned by Mrs. Ramsey with Mr. Smith just after the first trial at Farmerville. I told him that the cows were Louise's and he said they were his.
>
> Then on April 15 (T. 14) of this year he came to my house. He drove up and I went out where he was and Bill said "You get up here in the car. I want to talk to you." I got up there in the car with him and he said, "I want you to go down to Louise's or Mrs. Ramsey's and tell her I'll give her $1,250.00, you know, to compromise."

After objection, according to appellant's abstract, he added:

> Well, to finish it, (T. 17) Bill said, "I'll give her $1,-

250.00 and the cows back, but one of the calves are about dead. The cows run at it and knock it around and it's about dead. Truett West is my lawyer and I'll go over to Ellis Smith's and see them." He asked if I would go ahead and see Mrs. Ramsey but she had flu and I wouldn't go down there.

I concede that the portion of the testimony given before the objection, standing alone, would have been inadmissible. But if the witness had been permitted to complete his statement, as he did in chambers, there is a very good argument supporting its admissibility.

This theory was clearly recognized in *Cunningham v. Davis,* 203 Ark. 982, 159 S.W. 2d 751. That was a suit for overtime pay under the authority of the Fair Labor Standards Act. The appellee-plaintiff was permitted, over objection, followed by motion for mistrial, to testify as follows:

"Q. What did he ask you? A. If I didn't want to compromise and let him pay me for the overtime when he was paying twenty-five cents — [1]

The trial judge instructed the jury not to consider the offer of compromise as evidence against the defendant, but left the testimony to the jury for what it was worth. We quoted from the annotation "Admissibility of admissions made during discussion of compromise" to *Erickson v. Webber,* 80 A.L.R. 919. The statements were to the effect that if a statement forming a part or connected with an offer of compromise is an admission of an independent fact pertinent to the question in issue, evidence of the statement is admissible and that "express admissions of liability made during negotiations for compromise have been held to be admissible in evidence." We also cited 26 Am. Jur. 478, Evidence, § 566, and *Lake v. Wright,* 186 Ark. 227, 53 S. W. 2d 233. There is very respectable authority in support of this principle. II Wigmore 34, 39, § 1061; *O'Bryan v. Home-Stake Production Company,* 195 Kan. 213, 403 P. 2d 978. The nearest we seem to have come to a rejection of this rule is

---

[1] Twenty-five cents per hour was the straight-time pay basis.

*Wilkerson* v. *Gerard,* 200 Ark. 125, 138 S.W. 2d 76. I submit that there was a much more positive admission of liability here than there.

While I agree the majority reached the right result in holding that the fact the offer was not made to appellee or to one who was her agent was not decisive, it was necessary to resort to authorities in foreign jurisdictions to support this decision. I find authorities seeming to permit a contrary result. See *San Francisco Iron & Metal Co.* v. *American Milling & Industrial Co.,* 115 Cal. Ap. 496, 1 P. 2d 1008; 31 C.J.S. Evidence § 285, p. 728.

Regardless of the correctness of the court's ruling, however, there is enough support for appellee's position that, in considering the prejudicial effect of the testimony, we should view it as having been offered in good faith and not in a deliberate effort to prejudice the jury, an important element in determining whether a mistrial should have been declared. It should also be noted in this regard that the testimony as to the offer came as a response to an inquiry whether appellant had come to the witness and said anything about the cattle. The response of the witness probably was a little more comprehensive then the examiner expected. A simple "yes" would have been a complete answer.

I cannot conceive of any means the trial court could have taken to sanitize the trial by elimination of any possible prejudice than was taken herein. The effect of the majority opinion is that a mistrial must be declared whenever any testimony relating to an offer of compromise is heard by the jury, however it may have come about and regardless of the lack of bad faith on the part of the parties. We have said many times that the declaration of a mistrial is such a drastic step that it should not be resorted to unless justice cannot be served by a continuation of the trial or unless prejudice cannot be removed by any other step or means. See *Rickett* v. *Hayes,* 256 Ark. 893, 511 S.W. 2d 187 (1974). Usually such a step has been reserved for cases where there is flagrant misconduct of counsel or a deliberate and gratuitous reference to obviously improper matter. See. *Shroeder* v. *Johnson,* 234 Ark. 443, 352 S.W. 2d 570; *Ward* v. *Haralson,* 196 Ark. 785, 120 S.W. 2d

322; *First National Bank of Springdale* v. *Hobbs,* 248 Ark. 76, 450 S.W. 2d 298; *Oliver* v. *Jones,* 239 Ark. 572, 393 S.W. 2d 248; *Ragon* v. *Day,* 228 Ark. 215, 306 S.W. 2d 687. Usually we say that the trial judge must be accorded the broadest latitude in determining the appropriate action to eliminate the prejudicial effect of incompetent testimony. See *Arkansas State Highway Commission* v. *Shepherd,* 239 Ark. 1010, 395 S.W. 2d 743; *Briley* v. *White,* 209 Ark. 941, 193 S.W. 2d 326. Here the majority has really accorded him no latitude in just such a matter.

I dissent!